Com. of Pa. *v.* Day et al., Appellants.

Argued March 12, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

512

*Thomas D. Caldwell,* for appellant.

*A. Ross Walter,* for appellee.

OPINION BY JAMES, J., October 3, 1934:

The defendants were charged with the fraudulent conversion of an automobile and the proceeds thereof, and also with the larceny by bailee of that car. At the first trial, held December 11, 1929, it appeared that the defendants were partners in the automobile business. Harry A. Hartzell, prosecutor, purchased from the defendants, January 2, 1929, an Auburn Cabriolet automobile, giving in payment a Studebaker car and $1,000 in cash. A few days later the manager of the defendants told Hartzell that they had a quick sale for a car like the one Hartzell had bought, to a man by the name of Long, who wanted to go to Florida, and that they were unable to secure a car for him. He asked Hartzell to turn back his car to the company so that it could be sold to Long and said that the company would procure a new car for him within a week. Hartzell agreed, provided they would get him a car within a week, delivered the title to the car which he had bought, and surrendered it. The new car was never delivered to Hartzell. Repeated demands were made for it, as well as for the return of the money, but neither the car nor the money was given to him. When the Commonwealth's case was closed on the first trial, counsel moved the court to give binding instructions for acquittal. That motion was refused and at the close of the case, before the charge, counsel again

moved the court to ''give the jury binding instructions to acquit.'' The court said:

''We will not submit to this jury the question of fraudulent conversion but we will submit to the jury the question of larceny by bailee as to both defendants.''

During the charge the court said, in part, as to fraudulent conversion:

''They did not fraudulently withhold and convert his car, because he had surrendered the title to it. They had the money of Hartzell, but that money was not the proceeds derived from the sale or other disposition of Hartzell's car, it was the money which he had paid for the car, and therefore under the law we instruct you that no offense has been made out on the first count of this indictment.

''The second count charges the defendants with having become bailee of moneys belonging to Hartzell, which they did fraudulently and feloniously take and convert to their own use, and that case we are submitting to you.''

At the end of the charge, counsel said:

''If the court please, as I understand then, the jury is directed to return a verdict of not guilty upon fraudulent conversion, and the second count of larceny by bailee is submitted to them for consideration.'' The court replied: ''I think I made that clear.''

The jury rendered a verdict of ''guilty of larceny by bailee,'' nothing being said in the verdict about fraudulent conversion. A motion for a new trial was made on the ground that the court erred in overruling the motion for binding instructions to acquit and in submitting the question of larceny by bailee to the jury.

A new trial was granted, the district attorney consenting. The defendants then petitioned the court to discharge them on the ground that there was a verdict

of not guilty as to fraudulent conversion, and having been acquitted they could not again be put in jeopardy on this charge and that the evidence was not sufficient to sustain a verdict upon both counts. The court sustained the motion and discharged defendants. A petition was presented for a reargument within the term and, upon reargument, the court revoked the order discharging the defendants, overruled the motion therefor and granted a new trial on the charge of fraudulent conversion.

At the beginning of the second trial the defendants pleaded "not guilty, autrefois acquit, and former jeopardy," which the court overruled. At the close of the trial a verdict of guilty was returned.

Defendants then presented a motion in arrest of judgment, which motion was overruled; sentence followed, whereupon this appeal.

The question now presented is whether the court erred in overruling the plea of "autrefois acquit and former jeopardy."

The opinion of the learned judge of the lower court correctly points out that the pleas of "former acquittal" and "former jeopardy" are two distinct and separate pleas. The latter plea is based upon the Constitution of Pennsylvania, Art. I, Sec. 10, which reads, "...... No person shall, for the same offense, be twice put in jeopardy of life or limb; ......" The Supreme Court in an early case held that the plea of former jeopardy was applicable only to capital cases (McCreary et al. v. Com., 29 Pa. 323). This position has been reaffirmed and clarified by the recent case of Com. v. Simpson, 310 Pa. 380, 165 A. 498, where it was held that the plea was applicable only to the case of first degree murder. See also Com. v. Beiderman, 109 Pa. Superior Ct. 70, 73, 165 A. 765.

Therefore, the only question remaining in this case is whether or not there was a former acquittal upon

the charge of fraudulent conversion. There is no serious dispute as to the rule that where a jury considers an indictment containing two or more counts and returns a finding as to one count, but the verdict makes no reference to the other count, such verdict constitutes an acquittal on the counts which are not mentioned in the verdict, and a prior acquittal may be pleaded as to those counts on which the verdict is silent. Whorton, Criminal Law, 11th Ed. Vol. I, p. 528; 16 C. J. 260, Sec. 434; Girts v. Com., 22 Pa. 351; Com. v. Curry, 285 Pa. 289, 132 A. 370; Com. v. Sobel, 94 Pa. Superior Ct. 525.

It is the Commonwealth's contention that this case does not fall within the scope of the rule stated above for the reason that the court of its own motion withdrew the count as to fraudulent conversion from the consideration of the jury. The court below in its charge reviewed the facts of the case and then instructed the jury as follows:

"They had the money of Hartzell, but that money was not the proceeds derived from the sale or other disposition of Hartzell's car, it was the money which he had paid for the car, *and therefore under the law we have to instruct you that no offense has been made out on the first count of this indictment.* (Italics ours)

"The second count charges the defendants with having become bailee of moneys belonging to Hartzell, which they did fraudulently and feloniously take and convert to their own use, and that case we are submitting to you."

Without explicitly using the words "You must return a verdict of not guilty as to the first count" it is difficult to conceive a form of words other than those used by the court which would have more clearly indicated to a jury that they were instructed to return a verdict of not guilty to the first count.

However, the Commonwealth contends that the

court's reply to defendants' request for binding instructions indicates that the first count was withdrawn from the consideration of the jury. The court's reply to counsel was as follows: "We will not submit to this jury the question of fraudulent conversion, but we will submit to the jury the question of larceny by bailee as to both defendants." Counsel seizes on the words "not submit" as a conclusive indication that the jury was to return no verdict on the first count. With this we can not agree. In interpreting the word "submit" in the reply of the court it must be considered in connection with the request which prompted it. In view of the request of counsel, the fair meaning of the court's reply is that it assented to defendants' motion for binding instructions as to the *first* count and would allow the jury to decide as to the second.

The language of the court "We will not submit" clearly indicated that it would not permit the jury to find a verdict of guilty upon the first count, as is fully shown by the language of his charge which followed the refusal of the general motion for binding instructions, where he clearly charged that no offense had been made out on the first count of the indictment. If both counts of the present indictment had been submitted to the jury, a finding upon one count would clearly have resulted in an acquittal upon the other count and we see no valid reason why the failure of the jury to return a verdict as to the count for fraudulent conversion, which it had been instructed had not been made out, does not accomplish the same result.

The court in its charge uses a form of words which has been repeatedly used by the court for the purpose of directing a verdict of not guilty, viz: "......under the law we ...... *instruct* you that no offense has been made out on the first count ......" Furthermore, in the first of the three opinions filed by the

court it said "We are, therefore, of the opinion that we correctly *advised* the jury that no offense of fraudulent conversion had been made out." (Italics ours) To "advise" the jury that no offense is made out, or to "instruct" the jury that no offense is made out, is tantamount to the giving of binding instructions.

At the conclusion of the charge, in order that all doubt might be removed, counsel for defendants made the following statement to the court, "If the court please, as I understand it then, the jury is directed to return a verdict of not guilty upon fraudulent conversion, and the second count of larceny by bailee is submitted to them for consideration?", to which the court replied, "I think I made that clear." Counsel stated the proposition plainly, "...... I understand ...... the jury is directed to return a verdict of not guilty upon fraudulent conversion ......" and the answer is "...... I made that clear." Under this language we can draw no other conclusion than that it was the intent of the court to direct the jury to bring a verdict of not guilty on the first count.

The Commonwealth urges that the plea of autrefois acquit presupposes a verdict, but that does not presuppose a verdict on every count of the indictment. In the instant case, a verdict was found on the second count of the indictment and a failure to find a verdict on the first count results in an acquittal on that count.

The cases of Com. v. Beiderman, supra; Com. v. Keeper of Phila. Co. Prison, 76 Pa. Superior Ct. 98; Com. v. Friedman, 94 Pa. Superior Ct. 491, which the Commonwealth has earnestly urged as controlling, are not applicable for the reason that in these cases the jury had been discharged before they had an opportunity to render a verdict.

We subscribe to the sentiment expressed by the trial judge that we should not favor a criminal with "tender solicitude." But we do not agree, that where

a case has been fully tried and the jury has been instructed by the court, even though the instruction was wrong, that there can be no conviction upon one of the counts, "that the interest of justice in these days requires that a new trial should be had." In our solicitude for the interests of the Commonwealth we should not overlook our interest in the rights of the individual citizen who should not be subjected to unreasonable and vexatious prosecutions. From time immemorial we have adhered to the sound rule that where a man has been fairly tried on an indictment, he shall not be subjected to a second prosecution for the same offense. The fact that the court erred in his view of the law does not change the situation, as the Commonwealth is denied the right of appeal except in certain instances: Com. v. Ahlgrim, 93 Pa. Superior Ct. 595.

The judgment is reversed and the defendants are discharged without day.