Opinion by
 

 Woodside, J.,
 

 The appellant was found guilty by a jury on two charges of larceny and burglary, and he was sentenced to concurrent terms of 8 to 16 months in jail. The only question before us is whether it was error for the trial judge to deny the defendant’s counsel the right to examine a police file prepared by a Commonwealth witness who used it to refresh his recollection before coming into court.
 

 A police detective, testifying without notes, was asked on cross-examination whether he had refreshed his recollection prior to trial. He replied that he had. Pressed further, it developed that he had read a police file consisting of an initial report and supplemental reports prepared for every day on which he had worked on the ease. The trial judge, pointing out that the witness was not refreshing his recollection on the witness stand, refused the request of defendant’s counsel to have these reports produced so he might examine them.
 

 The defendant’s counsel was also denied the right to examine the reports of another witness, an officer on a different police force, who had refreshed his recollection prior to the trial by the use of a series of reports prepared by him.
 

 The means by which a witness can refresh his recollection prior to trial are almost unlimited. He may refresh his recollection from his own notes, which may have been made at the time of the event or at a later date. He may refresh his recollection by examining them at the trial, or immediately before trial or many months prior thereto. Mere retelling of an event may refresh the recollection of the teller. A visit to the scene of an occurrence may refresh one’s recollection.
 
 *47
 
 Asking another person for a name which “slipped one’s mind” can refresh the recollection. A look at a telephone book or calling the Revenue Department for a license number may refresh one’s recollection of a forgotten number. Reading another’s account of an event may refresh the recollection of forgotten details. Between the time of an event and the time of testifying concerning it, a witness’s recollection may be, and generally is, refreshed many times in many different ways.
 

 It appears that the appellate courts of this Commonwealth have not ruled on the right of an accused to inspect memoranda from which a Commonwealth witness refreshed his recollection before coming into court. Rules which can be found on the subject of refreshing the recollection are, in the words of Professor Wigmore, “merely crude rules-of-thumb,” and should not be treated as “dogmas.” Ill Wigmore on Evidence (3rd Edition) §765. The trial court’s discretion controls, and we should reverse only for a clear abuse of discretion. We find no abuse of discretion in this case.
 

 Although there is authority to the contrary,
 
 [1]
 
 the general rule was stated by Mr. Justice Roberts in
 
 Goldman v. United States,
 
 316 U.S. 129, 132, 62 S. Ct. 993 (1942), as follows: “Where a witness does not use his notes or memoranda in Court, a party has no absolute right to have them produced and to inspect them.”
 
 Jencks v. United States,
 
 353 U. S. 657, 77 S. Ct. 1007 (1957), even if it were binding upon us,
 
 [2]
 
 does not overrule the
 
 Goldman
 
 case.
 
 Needelman v. United States,
 
 261 F. 2d 802 (5 Cir., 1958); see also
 
 Palermo v. United States,
 
 360 U.S. 343, 79 S. Ct. 1217 (1959).
 

 In 98 C.J.S. Witnesses §362, p. 101, we find “it is generally held that opposing counsel is not entitled to
 
 *48
 
 examine a writing which the witness used to refresh his recollection prior to his examination, where he was able to testify from independent recollection after so refreshing his memory.” This is the rule also set forth in 82 A.L.R. 2d 562, and 58 Am. Jur., Witnesses §601. See also cases cited in above digests, particularly,
 
 State v. Crayton,
 
 354 S.W. 2d 834, 837 (Mo. 1962);
 
 State v.
 
 Strain, 84 Ohio App. 229, 82 N.E. 2d 109, 110 (1948);
 
 People v.
 
 White, 8 Ill. App. 2d 428, 131 N.E. 2d 803 (1956).
 

 In refusing a new trial the court below points out that the right to inspect police notes is meaningless unless it is considered with the right of cross-examination, and suggests that after such broad inspection of a police file a trial judge would find it extremely difficult to prevent a defense counsel from “distorting the records in the mind of the jury by questions out of context or raising collateral issues.”
 

 Judge Riley, speaking for the court below said: “The obvious length of investigations in this case, the attendant length and scope of the records and reports, the difficulty of confining counsel to proper limits and avoidance of distortion by piecemeal examination, the number and breadth of the collateral issues that might be raised as well as the procedural difficulties involved to procure the notes and reports and have the officers available at a later time for examination renders the situation before the trial court here far from simple and free of serious difficulty.”
 

 We agree with the court below that the opportunities of abuse and distortion are obvious and would raise collateral issues of considerable scope with no real guide for limitations.
 

 The file from which the detective refreshed his recollection was not an arrest report dealing only with the defendant. It was the file of an investigation. When
 
 *49
 
 an experienced detective is assigned to investigate a serious crime, lie proceeds as a suspicious person routinely investigating and interrogating many innocent people. Numerous questions cross Ms mind and demand Ms attention. Was there actually a burglary or might the victims have faked a burglary in order to collect insurance or for some other reason? What known burglars on parole were living in the area and where were they when the burglary was committed? Were there any people making unusual expenditures in the neighborhood immediately after the burglary? Who was seen in the vicinity of the burglary and what were they doing? Who made recent purchases of tools that might have been used in the burglary? Notes of these investigations are made and may include the names of scores of persons whose innocence was subsequently established, but who for some good reason were investigated. The possible injury to the reputation of these innocent people caused by the mere reference to their names as suspects is entitled to consideration.
 

 But passing this consideration, will allowing the use of this file be an aid in arriving at the truth? Is counsel to be allowed to cross-examine the detective on each person named in the file? Is the cross-examination to be limited to the facts which threw suspicion upon each named person, or are the facts which convinced the officer of the person’s innocence to be weighed by the jury against the facts which first created suspicion? The latter would result in numerous collateral trials of different people; the former would be confusing and misleading to the fact-finder. We might further note the difficulty of separating hearsay and suspicion from facts contained in the memoranda.
 

 We think the court below was correct in saying that the evils of permitting the inspection of the memoranda far outweighs the advantages. We shall follow
 
 *50
 
 the general rule stated by Justice Roberts, supra, and established in other jurisdictions.
 

 Judgment of sentence affirmed.
 

 [1]
 

 See
 
 Commonwealth v. Glad,
 
 40 Pa. D. & C. 330 (Dauphin County, 1940); III Wigmore (3rd Ed.) §762, page 111.
 

 [2]
 

 See
 
 Commonwealth v. Caplan,
 
 411 Pa. 563, 192 A. 2d 894 (1963).