## Commonwealth *v.* Samuels, Appellant.

Argued December 4, 1974. Before WATKINS, P. J. JACOBS, HOFFMAN, CERCONE, PRICE, and SPAETH, JJ. (VAN DER VOORT, J., absent).

Parker H. Wilson, with him Wilson, Oehrle & Drayer, for appellant.

Stewart J. Greenleaf, Assistant District Attorney, with him Ross Weiss, Assistant District Attorney, William T. Nicholas, First Assistant District Attorney, and Milton O. Moss, District Attorney, for Commonwealth, appellee.

OPINION BY PRICE, J., June 24, 1975:

Appellant was found guilty by the trial judge sitting without a jury of possession of dangerous drugs.[1] Following denial of motions for a new trial and in arrest of judgment, appellant was sentenced to pay the costs of prosecution, to pay a fine of $2,000, and to undergo imprisonment for not less than 11 months nor more than 23 months. This appeal followed.

The facts as recited in the lower court opinion and amply supported in the record reveal that following an extensive investigation by the Pennsylvania and New Jersey State Police, a search warrant was obtained on August 5, 1972, authorizing the search of a house and barn located at 94 Hiffletrayer Road in the Green Lane section of Marlboro Township, Montgomery County, Pennsylvania. That same day, Pennsylvania State Policemen proceeded to the above location to execute the warrant. However, the premises were unoccupied and the police then set up a continuous surveillance of the house and barn.

At approximately 11:00 p.m. on August 6, 1972, the troopers observed two vehicles drive onto the property.

---

1. Appellant was arrested for violation of The Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, No. 64, §1 (35 P.S. §780-101) et seq.

The police approached the house and officers were stationed at various points to prevent escape. Corporal Bason, the officer in charge, glanced into the house through a window and observed appellant and another person seated in the living room with a weighing scale and a number of packages wrapped in paper on a table and on the floor between them. The police proceeded to the front door and pounded on it, causing the door to open several inches. The officers testified that they heard a dog growling and running towards the door. The troopers then pushed the door completely open and entered the house. They immediately informed appellant that they were police, that they had a warrant to search the premises, and that appellant was to control his dog.

The search of the house and barn proved very fruitful as the officers uncovered a large amount of marijuana. The police confiscated 14 "bricks" of marijuana from the table and floor in the living room where appellant was, each wrapped in brown paper and each weighing approximately 486.7 grams. In addition, the police uncovered 16 similar bricks of marijuana in the attic, 32 jars each containing approximately 100 grams of hashish in the barn, 27 peat pots containing germinating marijuana plants in the second floor bedroom, 443 grams of marijuana in a bag in the living room, and other "narcotics paraphernalia" from various parts of the house.

Appellant first complains that the trial court was in error when it refused to allow the appellant to inspect notes used by one of the Commonwealth's witnesses to refresh his memory the day before the suppression hearing. The witness, a state policeman, used these notes before the hearing began and *did not* refer to them while on the witness stand. The applicable law in the Commonwealth concerning a defendant's right to examine such notes is set forth in *Commonwealth v. Fromal,* 202 Pa. Superior Ct. 45, 195 A. 2d 174 (1963). The *Fromal* court held that where a witness does not use his notes in court,

but rather uses them outside of court to refresh his memory, a party has no absolute right to have them produced and to inspect them. The trial court's discretion controls, and we will reverse only for a clear abuse of the discretion. However, we find no abuse of discretion which would warrant a reversal in the present case.

Appellant contends that the physical evidence seized by the police should have been suppressed because the probable cause which supported the warrant was based on erroneous information. Appellant argues that the officers gave conflicting testimony at the suppression hearing. Trooper Coyle of the New Jersey State Police testified that an informant had assured him that there was a large amount of controlled, dangerous substance (marijuana) at the farmhouse, while Corporal Bason and Trooper Weniger of the Pennsylvania State Police testified that Trooper Coyle had told them that the informant had been at the farmhouse on August 4, 1972, and had observed the marijuana. Appellant argues that Corporal Bason and Trooper Weniger were not actually told by Trooper Coyle that the informant had been at the scene, but that the officers added this extra bit of information on their own. We do not agree.

Trooper Coyle testified at some length at the suppression hearing and was quite candid about the information received from the informant and the development of the case against appellant. Appellant had the opportunity to cross-examine Trooper Coyle as to any of his testimony, but appellant elected not to ask any questions of this witness. Neither Corporal Bason nor Trooper Weniger heard Trooper Coyle's testimony as all witnesses were sequestered. Nevertheless, both Bason and Weniger gave substantially the same statements at the hearing. We do not see the inconsistency appellant perceives to be lurking in the record, and do not feel constrained to reverse on appellant's speculation.

To determine if there was adequate probable cause to support the issuance of the warrant, the magistrate could

consider both the affiant's written statement and his sworn oral testimony. *Commonwealth v. Milliken*, 450 Pa. 310, 300 A.2d 78 (1973).[2] The factual averments contained in the affidavit supporting the complaint for a search warrant were recited in the lower court opinion as follows:

"(1) That on or about June 7, 1972, Corporal Francis Bason (the affiant) and Trooper Walter Weniger of the Pennsylvania State Police received information from Trooper Cliff Coyle of the New Jersey State Police that an informant had stated to him that a number of individuals from the Ocean Gate, New Jersey area were known to travel to a farm in Montgomery County to purchase marijuana;

(2) That the informant had provided the New Jersey State Police with information in the past and that the information had proven to be reliable;

(3) That on June 8, 1972, Trooper Coyle reported to Corporal Bason and Trooper Weniger that the same informant told him that the farm was occupied by one Andrew Samuels and that the location of the farm was at 94 Hiffletrayer Road, Green Lane, Pennsylvania;

(4) That on June 8, 1972, Corporal Bason and Trooper Weniger learned from the United States Postal authorities that one Andrew Samuels received mail at 94 Hiffletrayer Road, Marlboro Township, Pennsylvania;

(5) That also on June 8, 1972, Corporal Bason and Trooper Weniger conducted a surveillance of 94 Hiffletrayer Road and observed 'No Trespassing' signs posted on the property which bore the name of Andrew Samuels;

(6) That the surveillance and further investigation on June 8, 1972 also revealed that there had been

---

2. This procedure has since been changed by Pa. R.Crim.P. 2003(a).

a large amount of traffic in the area for some time and that all of the persons entering the premises appeared to be the 'hippie type';

(7) That on June 13, 1972, Trooper Weniger and Trooper Michael White conducted a surveillance of the premises and observed a car entering the property with the registration number New Jersey, W1Y189. Further investigation revealed that the registration had been issued to one Gary W. Moses, who lived in the Ocean Gate, New Jersey area and had been arrested previously by the New Jersey State Police on drug charges;

(8) That on August 4, 1972, Trooper Weniger received information from Trooper Coyle that the informant had reported that Andrew Samuels was holding a quantity of marijuana at the farm in Montgomery County;

(9) That Andrew Samuels had been previously arrested in New Jersey on drug charges."[3]

In addition to the written factual averments, Corporal Bason and Trooper Weniger, while under oath, gave the following information orally to the magistrate:

"(1) That in March of 1972, Trooper Weniger received information from the United States Customs Department that a plane carrying 80 kilos of marijuana had crashed in Kentucky and that the pilot had told Federal authorities that he was to deliver the marijuana to two individuals whom he identified as Andrew Samuels and John Morrison. The telephone number with which he was to contact Samuels and Morrison was listed to the farmhouse at 94 Hiffletrayer Road;

(2) That the informant had personally visited the farmhouse on the previous day, August 4, 1972, and had observed a large quantity of marijuana on the premises;

---

3.  *See* lower court opinion at 3-4.

(3) That the informant had provided information to the New Jersey State Police in the past which had resulted in several arrests;

(4) That Gary Moses, referred to in the affidavit had been arrested with Andrew Samuels in New Jersey."[4]

When we examine the written and oral statements given to support the warrant, we find them more than sufficient to support probable cause. The standard for determining the sufficiency of the affidavit was enunciated in *Aguilar v. Texas*, 378 U.S. 108 (1964):

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, (citation omitted), the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, (citation omitted), was 'credible' or his information 'reliable'." 378 U.S. at 114.

In other words, the affiant must give facts sufficient to enable the issuing authority to make two independent judgments: (1) that the affiant is probably correct in his belief that the informer is reliable, and (2) that what the informer told the affiant is probably accurate. *Commonwealth v. Tasco*, 227 Pa. Superior Ct. 144, 323 A.2d 831 (1974). The first requirement may be met where the affidavit either sets forth the manner in which the informant obtained his information or describes the criminal activity in detail, *Commonwealth v. Soychak*, 221 Pa. Superior Ct. 458, 289 A.2d 119 (1972); the second requirement may be met in several ways, one of which is by establishing the informant's past reliability. *Soychak, supra.*

---

4. *See* lower court opinion at 4.

In the present case, the oral testimony established the manner in which the informant obtained his information —he was at the farmhouse the day before the warrant was issued. The informant's past reliability was established by his prior aid in successful convictions and by the proven accuracy of the information he had supplied concerning the instant case prior to the issuance of the warrant. For example, the informant had furnished the police with the address of the farmhouse several months before the search.

Although the information supporting probable cause consisted to a large extent of hearsay, our courts have permitted the use of hearsay in such a situation. *Commonwealth v. Falk*, 221 Pa. Superior Ct. 43, 290 A.2d 125 (1972). When considering the validity of hearsay, we will consider four factors: (1) did the informant give prior reliable information; (2) was the informant's story corroborated by any other source; (3) were the informant's statements a declaration against interest; and (4) does the defendant's reputation support the informant's tip. *Commonwealth v. Ambers*, 225 Pa. Superior Ct. 381, 310 A.2d 347 (1973). These are general guidelines and each and every factor need not be established for the court to uphold the validity of the warrant. *Ambers, supra.*

We have no difficulty concluding that the informant was reliable, and while his story was not completely corroborated by other sources, the continuing police investigation did support the information he gave. Finally, defendant's prior arrests for drug violations showed a reputation consistent with the informant's tip. The search warrant issued was based on adequate probable cause.

Appellant next questions the actual execution of the warrant. He contends that the police failed to comply with the "knock and announce" standards before entering the house. Under normal circumstances, the police are required to knock on the door, announce their identity and purpose, and then give the occupants a reasonable

amount of time to voluntarily admit the police. *Commonwealth v. DeMichel*, 442 Pa. 553, 277 A.2d 159 (1971). In order to justify a deviation from this path, the police must show the existence of exigent circumstances.

The police have been permitted to forcefully enter a house, apartment, or other dwelling, without waiting to be admitted where facts known to the officers justify a reasonable belief that evidence is about to be destroyed, *Commonwealth v. McAleese*, 214 Pa. Superior Ct. 228, 252 A.2d 380 (1969); where facts known to the officers make then virtually certain that the occupants of the premises know their identity and purpose, thus making any announcement a "useless gesture," *Commonwealth v. Johnson*, 223 Pa. Superior Ct. 83, 289 A.2d 733 (1972); or where facts known to the officers indicate delay in entry would cause peril to the lives of the officers. *Johnson, supra.*

Although the police did not follow the knock and announce rule, their actions under the circumstances were reasonable. Corporal Bason *did not* break down the door, but rather the door came open when the Corporal pounded on it. At that time, a large police dog rushed at the door, growling. The officers did not know with what potential danger they would be confronted when the door opened. Although faced with an unusual situation, the police reacted in a positive manner. They entered the house and immediately announced their identity and purpose and took steps to control the dog. It would be totally unreasonable, as well as unrealistic, to expect the officers to reclose the door and continue knocking. Under the circumstances here established by the evidence, we find no merit to appellant's contention.

Appellant additionally argues that there was insufficient evidence to find beyond a reasonable doubt that he had a controlled substance in his possession. Since the drugs were not found on the appellant's person, the Commonwealth must prove constructive possession. Two ele-

ments are essential to such a finding: the power to control and the intent to exercise that control. *Commonwealth v. Townsend,* 428 Pa. 281, 237 A.2d 192 (1968). These elements can be inferred from the totality of the circumstances. *Commonwealth v. Carter,* 230 Pa. Superior Ct. 236, 326 A.2d 480 (1974).

The Commonwealth presented evidence to establish that appellant controlled the premises as the owner or lessee. The United States Postal authorities delivered mail to the farm addressed to appellant. During the search, the officers found various bills and letters addressed to the appellant at the Hiffletrayer address. In addition, the officers testified that "no trespassing" signs, signed in appellant's name as owner or lessee, were observed posted on the property, and that additional signs were found in the house. Although they were not admitted into evidence, the trial court did permit Corporal Bason to read one of the signs and testify that he had observed similar ones posted on the property.

Appellant contends the lower court erred in admitting into evidence testimony concerning the signs, alleging that they constituted hearsay as the signature was not authenticated. With this we do not agree. The testimony was not offered to prove the truth of what was printed on the signs, but rather to show that the signs were there. Testimony as to an out of court statement, written or oral, is not hearsay if offered to prove, not that the content of the statement was true, but that the statement was made. *Commonwealth v. Wright,* 455 Pa. 480, 317 A.2d 271 (1974); *Commonwealth v. Sampson,* 454 Pa. 215, 311 A.2d 624 (1973). The existence of the signs, whoever signed them, was another piece in the puzzle of circumstantial evidence which led to the lower court's determination that appellant did control the premises.

Appellant then argues that even if we determine he was in control of the house there is still insufficient evidence to show he constructively possessed or controlled

the drugs. Appellant correctly cites *Commonwealth v. Reece*, 437 Pa. 422, 263 A.2d 463 (1970), for the proposition that mere presence at the scene of a crime does not constitute probable cause for an arrest, and *Commonwealth v. Tine*, 221 Pa. Superior Ct. 318, 292 A.2d 483 (1972), for the proposition that knowledge of the presence of contraband drugs does not establish possession or control.

However, appellant was not convicted on the basis of his mere presence at the scene where drugs were found nor on the basis of his mere knowledge that the drugs were there. Rather, the conviction was based on the totality of the circumstances. *Commonwealth v. Carter*, *supra*. Appellant was found in his own home with 14 "bricks" of marijuana on a table and on the floor directly in front of him. There was also a weighing scale on the table with the narcotics. These drugs were in no way concealed but were instead in the open in plain view, and were easily within reach of appellant. To say that appellant did not control the marijuana lying on a table in front of him in his own home is to ignore the obvious. Narcotics need not be found on the appellant's person before a conviction will be sustained. *Commonwealth v. Walley*, 225 Pa. Superior Ct. 465, 310 A.2d 381 (1973).

These facts easily distinguish this case from *Commonwealth v. Tirpak*, 441 Pa. 534, 272 A.2d 476 (1971),[5] and make it similar to our decision in *Commonwealth v.*

---

5. In *Tirpak*, police, acting on a tip, secured a search warrant and raided a party being held in a house. When the police entered the house, they found seven people in the game room, which contained an open jar of marijuana and four butts of marijuana cigarettes in an ash tray. The open jar was on the floor in the center of the room, and the closest any of the appellants was to the jar was eight feet. Four of the people found in the room were convicted of possession or control of narcotics. The Pennsylvania Supreme Court reversed, holding that the facts were insufficient to prove beyond a reasonable doubt that those convicted actually had possession of the drugs.

*Santiago,* 223 Pa. Superior Ct. 493, 305 A.2d 378 (1973).
In *Santiago,* as the police entered a bedroom, one defendant threw packets of heroin out of a window, and more heroin was found on and under the bed. Three other defendants were found sitting around the bed, within arm's length of these drugs. The court concluded there was sufficient evidence to find that the defendants possessed the drugs.

In addition to the marijuana found in the living room with appellant, the police uncovered drugs in the attic and in the barn, and found germinating marijuana plants in the second story bedroom. While our courts have held that " '[t]he fact of possession loses all persuasiveness if persons other than the accused had equal access . . . to the place in which the property was discovered. . . .' *Commonwealth v. Davis,* 444 Pa. 11, 16, 280 A. 2d 119, 121 (1971)," *Commonwealth v. Fortune,* 456 Pa. 365, 369, 318 A.2d 327, 329 (1974), they have also stated that the inference of possession will be maintained if the drugs are found in a place normally accessible only to a resident of the home. *Fortune, supra.*

Unlike rooms such as the kitchen or living room which are normally accessible to anyone in the house, the attic, second story bedroom, and barn are more "remote" areas of the house. Although appellant was accompanied by another person on the night of his arrest, the police entered the house such a short time after appellant and his companion, that it was impossible for anyone to secret the marijuana at the various places between the time of appellant's arrival and the arrest. The instant case is distinguishable from *Commonwealth v. Fortune, supra,* where the police found heroin on the floor of a kitchen and charged the owner of the house with possession of the drug. In reversing, the Pennsylvania Supreme Court held that because there were guests in the house at the time, the owner could not be held responsible for everything found in common areas of the house.

When we consider all of the evidence, we find it sufficient to support the conviction for possession of narcotics. The test to be applied when determining the sufficiency of the evidence, be it direct or circumstantial, is whether, accepting as true all the evidence and all reasonable inferences therefrom, upon which, the trier of fact could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty. *Commonwealth v. Pitts*, 450 Pa. 359, 301 A.2d 646 (1973); *Commonwealth v. Dawkins*, 227 Pa. Superior Ct. 558, 322 A.2d 715 (1974).

Appellant finally contends that the judge erred in sentencing him on the charge of possession with intent to deliver. With this argument we are forced to agree. Appellant was indicted for (1) possession of a controlled or counterfeit substance; (2) purchase of a controlled substance, drug, or device from a person not authorized by law to sell, distribute, dispense, or otherwise deal in such controlled substance, drug, or device; and (3) feloniously manufacturing, knowingly creating, delivering, or possessing with intent to manufacture or deliver a controlled or counterfeit substance.[6] The three counts of the indictment represent separate and distinct crimes under The Controlled Substance, Drug, Device and Cosmetic Act.[7]

The trial judge found appellant guilty of "the charge of possession of dangerous drugs, of these drugs,' beyond a reasonable doubt in the opinion of the Court."[8] However, he made no comment as to the other two counts of the indictment. Later, at the sentencing proceedings, the trial judge attempted to correct the verdict to reflect that the intention was to find appellant guilty of possession with intent to deliver. However, the attempt to modify

6. Appellant was also indicted for conspiracy but was found not guilty.

7. *See* 35 P.S. §780-113(a)(16), (19), and (30).

8. NT 112.

or explain, at that late stage, an already clear verdict must be ineffective. When the trial judge found appellant guilty of possession and made no comment at that time as to the other counts of the indictment, this acted as an acquittal of the unmentioned counts. *Commonwealth v. Curry,* 285 Pa. 289, 132 A. 370 (1926); *Commonwealth v. Day,* 114 Pa. Superior Ct. 511, 174 A. 646 (1934).

The trial judge incorrectly sentenced appellant for the crime of possession with intent to deliver. Since our courts always have the power to modify an excessive sentence, *Commonwealth ex rel. Perrotta v. Myers,* 203 Pa. Superior Ct. 287, 201 A.2d 292 (1964), we affirm the judgment of the lower court as to the conviction for possession of narcotics and remand for further sentencing proceedings consistent with this opinion.

———

CONCURRING OPINION BY CERCONE, J.:

I agree with the majority opinion in essentially all its particulars, and I agree that the case must be reversed in part and be remanded for appellant's resentencing. I disagree, however, with the majority in its treatment of the hearsay issue raised herein.

As applied to the facts of the instant case, I respectfully submit that the majority is wrong when it asserts that the testimony concerning no trespassing signs was not offered to prove the truth of the statement, but offered only to show that the statement was made. The only possible relevance that the signs have is in showing that Andrew Samuels asserted dominion and control over the property by forbidding trespassers. Whether or not Samuels had forbidden trespassers, as opposed to someone else who may have forged his signature or posted the signs without his consent, is therefore very much in issue. Thus, if the Commonwealth failed to establish, prima faciedly, that Samuels was the author of the signs or otherwise responsible for their posting, the testimony

of Officer Bason would be inadmissible hearsay. It would amount to no more than testimony that an unknown, out-of-court declarant had stated (in writing) that Andrew Samuels forbids trespassing on the farm. That situation would fit the classic definition of hearsay. See, e.g., 5 Wigmore on Evidence §1361 (Chadbourne rev. 1974) ; 2 Jones on Evidence §8.1 (1972).[1] And, of course, the hearsay rule is not avoided when the out-of-court statement is written rather than oral. *Id.*

On the other hand, if there were evidence from which Samuels' responsibility for the signs could reasonably be inferred, the message on the signs would constitute an admission by a party, the defendant, that he exercised dominion and control over the property at least to the extent of excluding trespassers. As an admission, the message on the signs would not be inadmissible as hearsay. 4 Wigmore on Evidence §§1048-49 (Chadbourne rev. 1972). Hence, I generally agree with appellant's argument that the message on the signs was inadmissible hearsay unless it could be shown that the signs were attributable to Samuels. I disagree with appellant, however, that "authentication" of the signature on the signs was the only permissible way to establish that fact. Therefore, I concur in the decision of the lower court in admitting the testimony of Officer Bason for the reasons set forth below.

At the outset it should be noted that the authenticity, in the discrete sense of that term, of the signatures is not at issue. It is true, of course, that authenticity must be proved before a *writing* can be offered into evidence, and that special rules have evolved concerning the authenticity of writings. 7 Wigmore §§2130-32 (3d ed.

---

1. That situation clearly falls within the Wigmore formula: "a witness A on the stand testifies, 'B told me that event X occurred'"; where A is Officer Bason, B is the unknown declarant, and X is Samuels' statement that trespassing is forbidden.

1940). However, in the instant case, the signs themselves were not offered into evidence. And, any question whether the best evidence rule barred testimony of their contents[2] was not raised in the court below, and may not be considered in this appeal. *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A. 2d 114 (1974).

Thus, the question is whether there was sufficient evidence of Samuels' responsibility for the signs to support the court's decision to admit into evidence the testimony concerning their contents. As Professor Wigmore has stated: "[I]t may be noted that [the judge] may of course *hear evidence on both sides* for determining the facts on which the rule of admissibility turns . . . and that the judge's determination on this question ought to be *final*, beyond review by appeal, and is so by the wholesome rule of a few Courts." 9 Wigmore on Evidence §2550 (1940). Further, "[t]he rule of reasonable doubt . . . has here no possible application." *Id.* at n. 6. In the instant case other facts and circumstances indicated that appellant exercised dominion and control over the farm, especially his receipt of mail at that address. If that evidence is accepted, it is more likely than not that Samuels posted the no trespassing signs. While this other evidence of dominion and control may not have been sufficient to establish that fact beyond a reasonable doubt, the evidence certainly was sufficient to support the court's initial decision to admit Officer Bason's testimony. Beyond that, the weight to be given to that testimony was for the jury.

I therefore would find that the officer's testimony concerned admissions by Samuels, and was beyond the pale of exclusion by the hearsay rule.

HOFFMAN, J., joins in this concurring opinion.

---

2. See, however, 1 Henry, Pennsylvania Evidence §284 (1953).