# McElwee v. Leber

C.P. of Lycoming County, no. 00-01,795.

*C. Scott Waters* and *Clifford A. Rieders,* for plaintiffs.
*Alan R. Krier,* for defendants Leber, Edelman, EM Care and New Jersey/Pennsylvania EM-1 Medical Services.
*Robert A. Seiferth* and *David R. Bahl,* for defendants Sinsabaugh, Koons, Kerschner, Muncy Valley Hospital, Susquehanna Health Sustems, Susquehanna Physician Services.
*C. Edward S. Mitchell,* for defendants Shearer and Donald E. Shearer, M.D. P.C.

KIESER, *J.,* December 9, 2002—The motion before the court is defendants Susquehanna Health Systems, Muncy Valley Hospital, Susquehanna Physician Services, Sinsabaugh, Koons, and Kerschner's motion to compel production of documents of plaintiffs filed October 11, 2002. This case is a medical malpractice claim against the above captioned defendants regarding the medical care of plaintiffs' minor child, Jessica. On February 20, 2001, defendants Susquehanna Health Systems served a request for production of documents on plaintiffs. One of the requests stated:

"Kindly produce copies of any notes, memos, diaries, memorializations, statements, transcripts of recorded statements or interviews relating to, referring to, or in any way describing the allegations and events with respect to the subject matter upon which plaintiffs base

this action, authored by Kevin and Jo Ann McElwee, or anyone acting on their behalf and/or any person involved and/or related in any way to the incidents which are the subject matter of this lawsuit, excluding materials protected by Rule 4003.3 only." Defendants' motion, ¶2.

Plaintiffs' initial response was that they were not "aware or in possession of the requested information." However, it was later determined that the plaintiffs were in possession of such documents, but the documents were not being disclosed because they were protected by the attorney-client privilege. The plaintiffs did disclose to the defendants a handwritten document that Jo Ann McElwee prepared on her own. Plaintiffs' answer to defendants' motion, ¶6.

Defendants' motion specifically asks for "a copy of the typewritten factual summary prepared by plaintiff Jo Ann McElwee and relied upon by her in preparation for her deposition testimony" to be turned over to them. See defendants' motion, ¶21. But through briefs and argument, it is clear that the defendants are requesting other documents as well. The other documents at issue are: (1) two letters prepared by Jo Ann McElwee dated August 16, 2001, and (2) two diaries/journals prepared by Jo Ann McElwee. Plaintiffs' answer to defendants' motion, ¶12.

The defendants contend that the documents are not covered by the attorney-client privilege. The attorney-client privilege covers disclosures necessary to obtain legal advice. Defendants' brief, 3. The attorney-client privilege does not apply to facts, but only to legal theories or defenses. The documents requested contain only facts and not the legal opinions of counsel; therefore no

privilege applies to the documents. Thus, according to defendants, a summary of facts is discoverable even if prepared at the request of counsel.

Also, an adverse party is entitled to documents used to refresh the recollection of a witness under Pa.R.E. §612. The defendants contend that it would be in the interests of justice to require the plaintiffs to disclose the documents used by Jo Ann McElwee to refresh her recollection prior to testifying at the deposition. The documents were prepared close in time to the events at issue and would be a reasonably accurate source of information. Defendants' brief, 5. The defense is entitled to know if the deposition testimony and the facts in the summary are consistent. Also, the use of the summary to refresh Jo Ann McElwee's recollection is a waiver of the attorney-client privilege as to that summary. *Ibid.*

In contrast, the plaintiffs contend that the documents are covered by the attorney-client privilege and need not be disclosed. The purpose of the attorney-client privilege is to foster candid communication so that an attorney can provide legal advice based on the most complete information. Plaintiffs' brief, 7. While the attorney-client privilege does not cover facts, the content of a communication between an attorney and a client cannot be disclosed. *Id.* at 8. The documents at issue were prepared at the request of counsel for the sole purpose of this litigation. *Id.* at 13. The purpose of the documents is to assist counsel in providing legal advice based on the most complete evidence. *Id.* at 13.

The plaintiffs also contend that the use of some of the typed summary to refresh Jo Ann McElwee's recollection prior to her deposition testimony does not require

that the typed summary be automatically disclosed to the defense. Plaintiff's brief, 14. To obtain such documents a party must show that (1) the witness used the writing to refresh his memory; (2) the witness used the writing for the purpose of testifying; and (3) that production is necessary in the interests of justice. *Id.* at 14 (citing Pa.R.E. 612 and *Sporck v. Reil,* 759 F.2d 312 (3d Cir. 1985)). Jo Ann McElwee only used the typed document to refresh her memory as to what Jessica did the night before she was seen by one of the defendants. *Id.* at 17. This document did not influence Jo Ann McElwee's testimony "on any issue of material relevance in this litigation." Plaintiffs' brief, 15. Plaintiffs argue that the interests of justice would not be served by allowing the defense to go on a fishing trip through confidential communication when the use of the document was limited to refreshing Jo Ann McElwee's recollection on a "factually undisputed matter." *Id.* at 19.

Thus, there are two issues before the court. First, whether the documents are covered by the attorney-client privilege when prepared by the plaintiff, at the attorney's request, during a medical malpractice suit. Second, whether the use of the typed summary to refresh the witness' recollection before deposition testimony requires that the document be disclosed, despite the fact that it is privileged. The court believes that the documents at issue are covered by the attorney-client privilege. The court also believes that the use of the typed summary to refresh Jo Ann McElwee's recollection before her deposition testimony does not require that it be disclosed to the defendants.

Generally, "a party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party." Pa.R.C.P. 4003.1(a). Discovery will not be permitted if it goes beyond the scope of discovery "as set forth in Rules 4003.1 through 4003.5." Pa.R.C.P. 4011(c). Material subject to the attorney-client privilege is not discoverable as being beyond the scope of discovery. *Joe v. Prison Health Services Inc.,* 782 A.2d 24 (Pa. Commw. 2001); *Brennan v. Brennan,* 422 A.2d 510 (1980).

Pennsylvania has codified the attorney-client privilege. "In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client." 42 Pa.C.S. §5928. The attorney-client privilege applies only to "confidential communications made in connection with providing legal services." *Prison Health Services,* 782 A.2d at 31. The attorney-client privilege applies to those confidential communications that relate to "a fact of which the attorney was informed for the purpose of securing either a legal opinion, legal services or assistance in some legal proceeding." *Brennan,* 422 A.2d at 515. The party seeking the protection of the attorney-client privilege has the burden of proving "that it is properly invoked and the party seeking to overcome the privilege has the burden to prove an applicable exception to the privilege." *Prison Health Services,* 782 A.2d at 31.

The attorney-client privilege "is not concerned with prejudice, the better ascertainment of the truth, or the reliability of attorney-client communications." *Estate of Kofsky,* 487 Pa. 473, 482, 409 A.2d 1358, 1362 (1979). The purpose of the attorney-client privilege is to "foster candid communications between legal counsel and the client so that counsel can provide legal advice based upon the most complete information possible." *Prison Health Service,* 782 A.2d at 31. Without this privilege, the client may be "reluctant to fully disclose all the facts necessary to obtain informed legal advice if these facts may later be exposed to public scrutiny." *Ibid.* A client discloses information to an attorney in reliance on that attorney's "honor and fidelity." *Brennan,* 422 A.2d at 514 (quoting *Slater v. Rimer Inc.*, 338 A.2d 584, 589 (1975)). "To permit the attorney to reveal to others what is so disclosed, would be not only a gross violation of a sacred trust upon his part, but it would utterly destroy and prevent the usefulness and benefits to be derived from professional assistance." *Ibid.*

The term communication includes written communications by the client to the attorney. *Prison Health Services,* 782 A.2d at 31; *Benton v. Mechanicsburg Sub-Acute Rehab Associates,* 23 D.&C.4th 559 (Cumberland Cty. 1993). In *Joe v. Prison Health Services,* the plaintiff filed a motion to compel documents relating to the health care of inmates and evaluations of health care providers for the prison system. 782 A.2d at 29. The defendants asserted that the documents were protected by the attorney-client privilege, the Pennsylvania Medical Peer Review Act, and the doctrines of self-critical analysis

and deliberative process. *Id.* at 29-30. The trial court granted the motion to compel and ordered disclosure. *Id.* at 29.

The Superior Court affirmed. The Superior Court noted that the defendants failed to meet their burden of proving that the attorney-client privilege covered the documents. *Prison Health Services,* 782 A.2d at 32. "Defendants failed to establish, however, that any of the documents, for which they claim attorney-client privilege, were confidential communications, provided to City attorneys, for the purpose of obtaining legal advice." *Ibid.*

In *Folmer v. First Union Nat'l Bank,* no. 00-00,690 at 2 (Lycoming Cty. July 24, 2001), this court held that the redacted portions of a consolidated default log were not subject to the attorney-client privilege. This court stated that:

"The court fails to see how any of this relates to the attorney work product privilege or the attorney-client privilege. There are no opinions expressed by counsel or any other comment about the merits of the claim nor is there anything that could be regarded as confidential information being given to the attorney." *Ibid.*

There was no attorney-client privilege regarding the log because the document was not prepared to obtain legal advice. The log was not a communication between an attorney and client for the purpose of obtaining legal assistance. The log was kept in the regular course of the bank's business and would have been prepared even if there was a claim requiring the attorney to be involved.

In *Benton v. Mechanicsburg Sub-Acute Rehab Associates,* the plaintiff prepared a report of the incident at is-

sue in the case. 23 D.&C.4th at 561. The court of common pleas held that statement was protected by the attorney-client privilege. The statement regarding the incident was "a communication made solely for the purpose of procuring assistance of counsel." *Id.* at 563. Plaintiff provided the information to her attorney to assist him in providing the client his professional services and proceeding with her claim.

The typed factual summary, the two letters prepared by Jo Ann McElwee dated August 16, 2001, and the two diaries/journals prepared by Jo Ann McElwee are protected by the attorney-client privilege and beyond the scope of discovery. All of these documents were prepared at the behest of plaintiffs' counsel. Like *Benton,* the documents were prepared to provide counsel with the needed information to proceed with the plaintiffs' legal claims. Unlike *Prison Health Services* and *Folmer,* the sole purpose of creating the documents was to assist counsel in providing the plaintiffs with legal advice in regard to their medical malpractice claim. These documents would not have been generated absent the need for them by counsel to assist the plaintiffs.

The fact that the documents at issue are summaries of facts does not deprive them of the attorney-client privilege. The attorney-client privilege " 'only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney.' " *National Railroad Passenger Corp. v. Fowler,* 788 A.2d 1053, 1064 (Pa. Commw. 2001) (quoting *Upjohn Co. v. U.S.,* 449 U.S. 383, 395 (1981)). Notwithstanding, "[a] fact is one thing and a communi-

cation concerning the fact is an entirely different thing."
*Ibid.* For instance, a "client cannot be compelled to an-
swer the question, 'what did you say or write to the at-
torney?' but may not refuse to disclose any relevant fact
within his knowledge merely because he incorporated a
statement of such fact into his communication to his at-
torney." *Ibid.*

In *Gould v. City of Aliquippa,* the Commonwealth
Court held that the trial court erred in requiring an attor-
ney to prepare and produce summaries of the facts learned
from the attorney's interviews with clients. 750 A.2d 934,
938 (Pa. Commw. 2000). The attorney represented the
city in a suit regarding a motor vehicle accident where it
was alleged that a road owned by the city was either neg-
ligently designed or maintained and allowed the other
defendant to enter the roadway in the wrong direction.
*Ibid.* The attorney interviewed the city's chief of police,
the city administrator, the street superintendent, and a
city police officer. *Id.* at 937. The court indicated that
the attorney-client privilege applied to them if they had
authority to speak for the city and their titles suggested
that they possessed such authority. *Ibid.*

The plaintiffs filed a request for production of docu-
ments including "a request for summaries of any oral
statement taken from any witness relating to the acci-
dent." *Id.* at 936. Plaintiff filed a motion to compel and
the trial court ordered the city to provide the facts "se-
cured from all witnesses." *Ibid.* On appeal, the plaintiffs
argued that "the interviews were purely investigative in
nature rather than for the purpose of obtaining legal ad-
vice." *Id.* at 937. The plaintiffs cited to *United States*

*Fidelity & Guaranty Co. v. Barron Industries Inc.,* 809 F. Supp. 355, 364 (M.D. Pa. 1992), "for the proposition that the attorney-client privilege 'does not attach to discussions of the facts, no matter how extensive or involved the discussion may become.' " *Id.* at 938. The Commonwealth Court distinguished *United States Fidelity & Guaranty Co.,* in that the communication at issue there was written by the attorney when he was not acting as the company's attorney.

In the case before the Commonwealth Court, the summary of facts was impermissible as being protected by the attorney-client privilege. While the information gained from the interviews was a recounting of what happened during the accident (*i.e.,* the facts), the interviews were conducted while the attorney was acting as the city's attorney. *Id.* at 938. The interviews were communications between an attorney and client "conducted in preparation for [the] litigation." *Ibid.* In other words, the interviews and subsequent facts were disclosed to the attorney in order to obtain legal assistance so that the attorney could defend the lawsuit against the city.

The case sub judice is similar to *Gould.* While the documents in question may be just summaries of the facts concerning Jessica McElwee's medical care, those facts were communicated in a manner that shields them from discovery. The facts themselves are not shielded, but the documents that contain those facts are. Those documents were communications between an attorney and client for the purpose of prosecuting the medical malpractice claim. This is the crucial fact. As *National Railroad Passenger Corp.* stated, "[a] fact is one thing and a communication

concerning the fact is an entirely different thing." 788 A.2d at 1064. While the facts surrounding Jessica McElwee's medical care, in and of themselves, are discoverable, the communications between her parents and their attorneys disclosing those facts are not.

Having held that the documents are covered by the attorney-client privilege, the court must now address whether, despite this, the typed summary must be disclosed since it was used to refresh Jo Ann McElwee's recollection before testifying at her deposition. "[A] writing or [any] other object may be used by a witness to refresh or revive his or her present recollection of past events." *Commonwealth v. Proctor,* 385 A.2d 383, 385 (Pa. 1978). If a witness does use a writing or other item to refresh his memory, while during or before testifying, then "an adverse party is entitled to have the writing or other item produced at the hearing, trial or deposition, to inspect it, to cross-examine the witness on it and to introduce in evidence those portions that relate to the testimony of the witness." Pa.R.E. 612(a). If the document is used to refresh the recollection of the witness before the witness testifies, then it is within the discretion of the court to determine whether it is "necessary in the interests of justice" that the document be disclosed to the adverse party. Pa.R.E. 612(a).

The reason for disclosing the refreshing document for inspection is to protect against the "risk of imposition and false aids." Wigmore on Evidence §762, 136 (1970). The requirement of disclosure and inspection is to ensure that the refreshing document does just that and not provide a memory or recollection that did not previously

exist absent being shown the document. *Ibid.* Disclosure and inspection of the document allows the adverse party an opportunity to establish discrepancies between the document and the testimony. McCormick on Evidence §9, 32 (4th ed. 1992). The disclosure and inspection of the refreshing document allows the adverse party an opportunity to "expose all that detract from the weight of testimony" given by the witness who used to document to refresh her recollection. Wigmore on Evidence, *supra.*

However, a party does not possess, "absolute right to have [refreshing documents] produced and to inspect them" when the documents were used to refresh the recollection of the witness before testifying. *Commonwealth v. Samuels,* 235 Pa. Super. 192, 198, 340 A.2d 880, 883 (1975); *Commonwealth v. Fromal,* 202 Pa. Super. 45, 195 A.2d 174 (1963). If the document is used to refresh recollection before testifying, it is within the court's discretion to decide whether the document should be turned over for inspection. Pa.R.E. 612(A). The interests of justice guide that discretion. Pa.R.E. 612(A).

In *Commonwealth v. Samuels,* the defendant was arrested for violating the Controlled Substances, Drug, Device, and Cosmetic Act. 340 A.2d at 882. The day before the suppression hearing, a state policeman reviewed some notes to refresh his memory. *Ibid.* The state police officer "*did not* refer to them while on the witness stand," but only used the notes before testifying. *Id.* at 883. (emphasis in original) The discretion of the trial court controls whether disclosure should have been required, and absent a clear abuse of discretion the Supe-

rior Court will not reverse that decision. *Ibid.* The Superior Court found no clear abuse of discretion and held that the notes used to refresh the witness' recollection before testifying were not required to be turned over. *Ibid.*

In *Tirado v. Lehigh Valley Hospital,* plaintiffs brought a medical malpractice claim arising out of the delivery of their child. 49 D.&C.4th 110, 111 (Lehigh Cty. 2000). One of the doctors involved in the delivery was asked within a week of the incident to make a report of the delivery. She prepared a seven-page report regarding the delivery for peer review purposes. *Id.* at 112. During the deposition, the doctor was asked if she made any notes or record of what happened. The doctor responded yes and the plaintiffs asked for a copy. *Id.* at 117. Defense counsel refused the request except for disclosing the first page and portions of the second claiming the document was privileged under peer review. The court of common pleas ruled that the report was not privileged as peer review material and could be discovered. *Ibid.*

The court of common pleas also held that, although not used during the deposition, the doctor used the report in preparation for the deposition. It was not used at the deposition though. Because it was used in preparation, "fairness dictates that opposing counsel be provided with a copy of it." *Id.* at 117. In reaching that conclusion, the court of common pleas cited to *Commonwealth v. Proctor,* stating, "it is clearly settled that once a witness has resorted to a writing or other object to refresh recollection, the adverse party is entitled to inspect the writing and to have it available for reference in cross-examining the witness." *Id.* at 118 (quoting *Proctor,* 385 A.2d at 385).

The interests of justice do not require the typed summary used by Jo Ann McElwee to refresh her recollection prior to her deposition testimony to be disclosed to the defendants. This case is distinguishable from *Tirado* since the document at issue here is privileged. In the case sub judice, this court must try and resolve the apparent conflict between giving accord to the protection of the attorney-client privilege regarding the document and the purpose behind the disclosure and inspection requirement of Pa.R.E. 612(a). The question becomes whether the importance of disclosing the document "is sufficient to overrule the privilege given all the circumstances." McCormick on Evidence §93, 346 (4th ed. 1992).

The importance of the typed summary is not sufficient to overrule the attorney-client privilege protecting it. The purpose behind the disclosure and inspection requirement can still be achieved without disclosing the privileged communication. The Rules of Civil Procedure and Rules of Evidence provide the defendants with ample methods to obtain the relevant facts and information regarding this case and introduce them into evidence so that the weight of Jo Ann McElwee's testimony can be determined. While not absolute, the attorney-client privilege plays an important role in the American legal system and must be given the respect it deserves. This court will not infringe upon the attorney-client privilege to further the purposes behind the disclosure and inspection requirement when other avenues are open to achieve this purpose.

## ORDER

It is hereby ordered that defendants Susquehanna Health Systems, Muncy Valley Hospital, Susquehanna Physician Services, Sinsabaugh, Koons, and Kerschner's motion to compel production of documents of plaintiffs filed October 11, 2002, is denied.