456 A.2d 1356

**COMMONWEALTH of Pennsylvania**

v.

**James M. GILES, Appellant.**

Supreme Court of Pennsylvania.

Submitted Jan. 28, 1983.
Decided March 11, 1983.

414

Nino V. Tinari, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Mariana Sorensen, Asst. Dist. Attys., Philadelphia, for appellee.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

 

## OPINION

LARSEN, Justice.

On August 2, 1978, 62-year-old Willa Mae Hill was brutally stabbed to death and her apartment was ransacked. In connection with these crimes, a jury found appellant James M. Giles guilty of murder of the second degree and robbery. Following the denial of post-verdict motions, appellant was sentenced to concurrent terms of life imprisonment for murder and ten to twenty years imprisonment for robbery. This direct appeal followed.

Appellant first contends that the evidence was insufficient to support his convictions.

The test of sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing the proper inferences favorable to the Commonwealth, the trier of fact could reasonably have found that all of the elements of the crime had been established beyond a reasonable doubt.

*Commonwealth v. Pitts,* 486 Pa. 212, 215, 404 A.2d 1305, 1306 (1979).

■ Viewed in the light most favorable to the Commonwealth, the record in this case reveals the following facts: The decedent, Willa Mae Hill, lived in a second floor apartment above a bar owned by appellant's family. It was her custom to come into the bar each month to pick up her food stamps and Social Security check. On the afternoon of August 2, 1978, the decedent came into the bar, picked up an envelope, and left. Appellant, who lived in the third floor apartment above the bar and who worked in the bar, was in the bar when the decedent came in. Some time thereafter, appellant left the bar.

At about 4:20 p.m., police officer Dominic Bellizzie, responding to a radio call, found appellant lying on the sidewalk outside the apartment building. Appellant was surrounded by a group of spectators; appellant's cheek was bleeding and a broken knife was lying on the sidewalk about four feet in front of him. In response to a suggestion from

an unidentified onlooker, Bellizzie proceeded into the apartment building to investigate the second floor apartment. Once inside, Bellizzie found a wig, eyeglasses and a slipper in the hallway near the entrance. In the front bedroom, Bellizzie found the decedent lying on the floor in a pool of blood. While Bellizzie was investigating, appellant came into the apartment and tried to enter the bedroom where the decedent had been found. Bellizzie restrained appellant and, with the help of another police officer who had arrived on the scene, placed appellant in a second bedroom. Bellizzie then asked appellant, "What happened?" Appellant responded, "I know who did it." When Bellizzie asked, "Okay, who did it?" appellant responded, "I did it. Go ahead and take me downtown."

The bedroom where the decedent was found was in disarray; the bureau drawers were pulled out, some of the drawers' contents were on the floor, and the decedent's open purse was on the floor. There were also numerous bloodstains found in both the decedent's and appellant's apartments: an envelope in the top drawer of the decedent's bureau was stained with blood; appellant's blood was found in the decedent's apartment on a light switch in the kitchen, on the refrigerator, on the bedroom wall and on a piece of newspaper; and clots of the decedent's blood were found, along with some clothes and some bloodstained water, in the bathtub of appellant's third floor apartment.

The medical examiner testified that the decedent's death was caused by bleeding from at least eleven stab wounds to the neck, chest, abdomen and right leg. The medical examiner further testified that there was evidence that the decedent had been sexually assaulted.

This evidence is sufficient to prove both robbery and murder of the second degree beyond a reasonable doubt. The Crimes Code provides that

(1) A person is guilty of robbery if, in the course of committing a theft, he:

(i) inflicts serious bodily injury upon another;

. . . .

(2) An act shall be deemed "in the course of committing a theft" if it occurs in an attempt to commit theft or in flight after the attempt or commission.

18 Pa.C.S.A. § 3701(a)[1].

■ There is no question that the Commonwealth proved the element of serious bodily injury beyond a reasonable doubt. Further, we may infer from the facts of record that the decedent came into the bar and picked up her food stamps or Social Security check, and that appellant knew this. This inference, together with the disarray in the decedent's bedroom and the bloodstained envelope found in the decedent's bureau, constitutes sufficient evidence from which we may conclude that appellant stabbed the decedent in an attempt to take some of the decedent's property from her apartment.[2]

The Crimes Code also provides that

A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony.

18 Pa.C.S.A. § 2502(b). "Perpetration of a felony" is defined as

The act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery, rape, or deviate sexual intercourse by force or threat of force, arson, burglary or kidnapping.

18 Pa.C.S.A. § 2502(d).[3]

Appellant's admission to Officer Bellizzie that "I did it.

1. The Crimes Code provides that
   A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof.
   18 Pa.C.S.A. § 3921(a).

2. The fact that there is no evidence that appellant actually took any of the decedent's property is irrelevant, since a person may be guilty of robbery even if he only attempts to commit theft. See 18 Pa.C.S.A. § 3701(a)(1), (a)(2).

3. The Crimes Code provides that

Go ahead and take me downtown," along with the fact that the decedent was stabbed at least eleven times, is sufficient to prove that appellant was guilty of criminal homicide. Further, the evidence of appellant's attempt to commit a robbery is sufficient to prove that the criminal homicide of the decedent was committed by appellant in the perpetration of a felony. The evidence is thus sufficient to support appellant's conviction of murder of the second degree.

■ Appellant next contends that the trial court erred in allowing testimony concerning a sexual assault upon the decedent. The medical examiner testified that the decedent was found lying on the floor of her bedroom nude, except for a pair of socks and a blouse which was pulled up around her neck; that the tissues around the victim's vaginal and anal openings were stretched, torn and bruised; and that these injuries were most likely the result of a sexual assault. Appellant argues that since he was not charged with any sexual offense, the medical examiner's testimony only served to impermissibly inflame and prejudice the jury. This argument is without merit.

■ Where a murder is alleged to have been committed in the perpetration of a felony, there is no requirement that the defendant actually be charged with the underlying felony. *See Commonwealth v. Bastone,* 466 Pa. 548, 553–54, 353 A.2d 827, 830 (1976) and cases cited therein. In this case, appellant was charged with murder generally; the Commonwealth proceeded upon a theory of murder of the second degree based upon the underlying felonies of rape and robbery; and the challenged testimony of the medical examiner was relevant to prove an element of the crime with which appellant was charged, namely, the underlying felony of rape. *See* 18 Pa.C.S.A. § 2502(b), (d). Thus, even assuming that this testimony was of an inflammatory nature, its possible effect upon the jury did not outweigh its relevance

A person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being.
18 Pa.C.S.A. § 2501(a).

in proving an element of a crime with which appellant was charged.[4] *See Commonwealth v. Green,* 477 Pa. 170, 176, 383 A.2d 877, 880 (1978) ("All of the prosecution's evidence is intended to prejudice the defense. Simply because it is damaging to the defense is no reason to exclude the evidence. . . . Prejudicial evidence is inadmissible only if it violates rules concerning the admission of evidence.").

■ Finally, appellant contends that the Commonwealth withheld exculpatory evidence from him, in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[5]

■ The evidence which appellant sought to obtain was a "police 48." According to Officer Bellizzie, the "police 48" is a small form which gives brief details of the date, time and location of an incident, the name of the officer at the scene of the incident, and the name of the complainant. Although Bellizzie admitted that he had completed a "police 48" in this case, he stated that he had turned the form over to the police operation's room supervisor; that he had no idea what

4. After the Commonwealth rested, the trial judge reserved judgment on appellant's request that the jury not be instructed on the availability of rape as an underlying felony to support a conviction for murder of the second degree. In response, the Commonwealth withdrew its request to have the jury charged on the crime of rape as an underlying felony. Nevertheless, when the Commonwealth introduced the medical examiner's testimony at the beginning of its case, that testimony was still relevant to prove an element of the crime charged.

5. Appellant also contends 1) that the trial court erred in instructing the jury on murder of the second degree because there was no evidence to support such a charge, 2) that the trial court erred in admitting into evidence photographs of blood-stained clothing in appellant's bathtub, 3) that the trial court erred in admitting into evidence an inculpatory statement made by appellant at the scene of the murder, and 4) that the felony of attempted robbery could not form the basis for his conviction since he was never charged with attempted robbery. These issues have been waived, however, because they were not included in appellant's post-verdict motions. *See Commonwealth v. Blair,* 460 Pa. 31, 331 A.2d 213 (1975); *Commonwealth v. Gravely,* 486 Pa. 194, 404 A.2d 1296 (1979).

happened to the form thereafter; and that he had attempted to get a copy, but that no such copy was available.

In *Brady*, the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

*Id.* at 87, 83 S.Ct. at 1196–1197.

In this case, there is no evidence that the prosecutor suppressed the "police 48" which appellant sought to obtain. In fact, testimony from appellant's suppression hearing reveals that police officials mistakenly threw away the "48" filed by Bellizzie so that the prosecutor never even had an opportunity to see it, much less to suppress it.

Further, it is difficult to imagine, and appellant does not suggest, how the names and dates on the "police 48" would be either favorable to him or material to the issues of his guilt or punishment. Accordingly, we conclude that there was no violation of *Brady* in this case.

Judgments of sentence affirmed.