469 A.2d 169

COMMONWEALTH of Pennsylvania

v.

Ronald GRAY, Appellant.

Superior Court of Pennsylvania.

Argued Feb. 9, 1983.

Filed Nov. 10, 1983.

Reargument Denied Jan. 19, 1984.

Petition for Allowance of Appeal Granted July 11, 1984.

38

David M. McGlaughlin, State College, for appellant.

Kenneth D. Brown, District Attorney, Williamsport, for Commonwealth, appellee.

Before BROSKY, WIEAND and CIRILLO, JJ.

WIEAND, Judge:

In this appeal from judgment of sentence imposed following the conviction of Ronald Gray for possession of marijuana with intent to deliver,[1] Gray contends that the evidence was insufficient to sustain the conviction. In the alternative, he contends that the trial court erred in denying pre-trial motions to suppress evidence and for a writ of habeas corpus. Finding no merit in these contentions, we affirm the judgment of sentence.

■ " 'The test of sufficiency of the evidence—irrespective of whether it is direct or circumstantial, or both—is whether, accepting as true all the evidence and all reasonable inferences therefrom, upon which if believed the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted.' " *Commonwealth v. Minoske*, 295 Pa.Super. 192, 198, 441 A.2d 414, 417 (1982) quoting *Commonwealth v. Frye*, 433 Pa. 473, 481, 252 A.2d 580, 584 (1969). Accord: *Commonwealth v. Giles*, 500 Pa. 413, 415, 456 A.2d 1356, 1357 (1983). In making this determination, we evaluate the entire trial record and consider all evidence actually received, whether or not the trial court's rulings thereon were correct. *Commonwealth v. Waldman*, 484 Pa. 217, 222–223, 398 A.2d 1022, 1025 (1979); *Commonwealth v. Barnes*, 310 Pa.Super. 480, 483, 456 A.2d 1037, 1038 (1983).

When so viewed, the evidence introduced at trial established that appellant, Ronald Gray, and one Brenda Summers were occupants of a home in a rural area of Lycoming County, Pennsylvania. On January 27, 1981, a search warrant was obtained for their residence and for two vehicles believed to be owned by or in the possession of Gray and

---

1. 35 P.S. § 780–113(a)(30).

Summers.  As noted in the trial court's opinion, "[p]olice officers first approached ... Gray at approximately noon on January 27, 1981, outside the Federal Courthouse in Williamsport, where Gray was employed.  Trooper Lampman of the Pennsylvania State Police advised Gray that he had a search warrant for Gray's house and two vehicles, and asked Gray to accompany the officers when the search warrant was executed.  Gray responded to the effect that he was going back inside, and walked away.  The officers then went to Gray's residence ... and met other police officers there who were executing the search warrant at the house.  Trooper Carey was directing the search of the premises.  When Trooper Carey [had] arrived at the residence at 1:00 p.m., no one was present.  Brenda Summers [had] arrived at approximately 1:20 p.m.  She [had] demanded a copy of the search warrant, after which the search began.  The search of the house yielded a small amount of marijuana, 41 grocery bags which smelled of marijuana, and various items of what Trooper Carey identified as 'drug paraphernalia', including scales, cigarette papers, and a 'hash pipe', among other things.  Trooper Carey was permitted to testify as an expert witness with respect to the odor of marijuana and the use of the items of paraphernalia, over [appellant's] objection.  The officers also searched the 1966 Impala, which had been placed on cinder blocks in the driveway of the residence.  Since no keys to the car were found in the house or on the person of Miss Summers, the officers had to force the trunk open to search the car. In the trunk they found a garbage bag and an apple box, which between them contained twenty 'Zip-lock' plastic bags, each containing marijuana.  [Nineteen] of the bags contained approximately one pound of marijuana, the other contained a smaller amount.  Trooper Carey was also permitted to testify as an expert concerning the amount of marijuana that one might possess for personal use as opposed to sale and distribution, and the use of a 'stash place' outside of the home for one who was dealing in marijuana.  It was his opinion that the amount of marijuana found in the case, combined with the way it was packaged,

indicated that it was to be sold. The search of the house had also turned up a temporary registration for the 1966 Impala in the driveway which indicated that Ronald Gray was the owner."

Because the marijuana in the trunk of the automobile was not found upon appellant's person, it was incumbent upon the Commonwealth to prove constructive possession. *Commonwealth v. Minoske, supra* 295 Pa.Super. at 197, 441 A.2d at 417; *Commonwealth v. Stokes,* 294 Pa.Super. 529, 539, 440 A.2d 591, 596 (1982). "To prove constructive possession, the Commonwealth [was] required to demonstrate that the accused had the power to control the contraband and the intent to exercise that power." *Commonwealth v. Jones,* 250 Pa.Super. 236, 239, 378 A.2d 914, 915 (1977) (citations omitted). Accord: *Commonwealth v. Minoske, supra* 295 Pa.Super. at 198, 441 A.2d at 417; *Commonwealth v. Thompson,* 286 Pa.Super. 31, 34, 428 A.2d 223, 224 (1981); *Commonwealth v. Daniels,* 281 Pa.Super. 334, 338, 422 A.2d 196, 197–198 (1980). These elements may be inferred from the totality of the circumstances. *Commonwealth v. Samuels,* 235 Pa.Super. 192, 205, 340 A.2d 880, 886 (1975). Where contraband is found among the defendant's personal effects, in a place normally accessible only to the defendant, the fact finder may properly infer that the defendant had both the power and intent to control the contraband. *Commonwealth v. Minoske, supra* 295 Pa.Super. at 198, 441 A.2d at 417; *Commonwealth v. Jones, supra* 250 Pa.Super. at 241, 378 A.2d at 916; *Commonwealth v. Samuels, supra* 235 Pa.Super. at 206, 340 A.2d at 887.

In the instant case, the Commonwealth's evidence established that appellant and Ms. Summers were the occupants of the house, that twenty bags containing marijuana were found in the locked trunk of a 1966 Impala automobile registered to appellant and resting on blocks in the driveway of the house. Although the fact of possession will lose persuasiveness if persons other than the accused have equal access to the place where the contraband is found, a locked

automobile trunk is not a place generally accessible to persons other than the owner of the automobile. See and compare: *Commonwealth v. Griffin*, 230 Pa.Super. 425, 326 A.2d 554 (1974). Moreover, the automobile in this case was inoperable and had been stored on blocks in the driveway of appellant's rural home. Under the totality of the circumstances shown by the Commonwealth, the trier of the facts could properly infer appellant's possession of the marijuana beyond a reasonable doubt. See: *Commonwealth v. Minoske, supra; Commonwealth v. Jones, supra; Commonwealth v. Samuels, supra; Commonwealth v. Ferguson*, 231 Pa.Super. 327, 331 A.2d 856 (1974).

An intent to deliver may also be inferred from the totality of the circumstances. *Commonwealth v. Gill*, 490 Pa. 1, 6, 415 A.2d 2, 4 (1980); *Commonwealth v. Bundridge*, 303 Pa.Super. 267, 272, 449 A.2d 681, 684 (1982); *Commonwealth v. Harmes*, 255 Pa.Super. 147, 151, 386 A.2d 551, 552 (1978); *Commonwealth v. Kishbach*, 247 Pa.Super. 557, 559 n. 2, 373 A.2d 118, 119 n. 2 (1976); *Commonwealth v. Cubler*, 236 Pa.Super. 614, 619, 346 A.2d 814, 817 (1975). Appellant was in possession of an amount in excess of 19 pounds of marijuana, packaged in separate, one pound bags. This was more than three hundred times the 30 grams specified by statute to be considered a "small amount for personal use," 35 P.S. § 780–113(a)(31), and was a quantity more consistent with trafficking in drugs than with personal use. The fact finder could permissibly infer an intent to deliver from these circumstances.

Appellant's contention that the affidavit in support of the search warrant failed to show probable cause is also meritless. Application for the warrant was made on January 27, 1981 by Corporal Barto, and the probable cause section of the affidavit contained the following statements:

"On 27 January 1981 a confidential informant related the following information to your affiant:

Between 23 January 1981 and 27 January 1981 the confidential informant # 1 was at residence of Ronald Gray, specifically described above. At the time the infor-

mant was present the informant personally saw approximately 20 pounds of marijuana. The informant further related that he had seen marijuana in the automobiles described above.

Your affiant believes the confidential informant to be reliable for the following reasons: Two other confidential informants gave confirming information. In addition Trp. Thomas R. Scales confirmed information.

On 16 January 1981 your affiant spoke with confidential informant # 2. At this time informant # 2 related that RONALD GRAY is one of the major drug distributors in Lycoming County. Informant # 2 is believed to be reliable because he has given information relating to Laughlin Jennings who is presently under criminal charges; Regina Webster and Curtis Missien who are presently under criminal charges; and David Fryday who is presently under criminal charges (the information relating to Fryday confirmed in a statement by Gina Brown who related that she purchased her drugs from Fryday). The informant # 2 stated that Fryday could be found in Wellsboro, Pa. as Fryday had left Williamsport. On 27 January 1981 Fryday was arrested in Wellsboro.

On 19 January 1981 District Attorney Kenneth D. Brown and Trp. John J. Monahan related the following to your affiant:

On 18 January 1981 Mr. Brown and Trp. Monahan spoke with confidential informant # 3. At this time confidential informant # 3 related that RONALD GRAY is one of the largest drug dealers in Lycoming County. Informant # 3 related that he had some contact relative to the purchase of drugs with Gray.

On 27 January 1981 Trp. Thomas R. Scales related the following to your affiant:

During the fall of 1978 Trp. Scales had set up a transaction with Gray to purchase two (2) cases of morphine from RONALD GRAY. During the course of the transaction, which took place in a cabin off Leg. Rte. 41028, a phone call came stating that there were police in

the area. Gray then refused to complete the transaction at that time. This information is contained in P.S.P. reports.

On 27 January 1981 when confidential informant # 1 related the information he was under oath.

On 27 January 1981 Trp. James Carey related the following information to your affiant:

On 27 January 1981 Trp. Carey in the presence of Ptl. Mark McCracken (South Williamsport Police) and confidential informant # 1 went to the residence of RONALD GRAY. At that time Trp. Carey located the above described home and the vehicles. The vehicles were present at the location described by the confidential informant.

On 27 January confidential informant # 1 further related that he had contacted Gray concerning the marihuana between 25 January 1981 and 27 January 1981. At this time the informant # 1 stated that Gray said he still had marihuana."

■■■■ " 'Probable cause to issue a search warrant has been defined as those facts reasonably necessary to show (1) that the items sought are connected with criminal activity, and (2) that the items will be found in the place to be searched.' " *Commonwealth v. Kanouff,* 315 Pa.Super. 392, 394–95, 462 A.2d 251, 252 (1983) quoting *Commonwealth v. Council,* 491 Pa. 434, 443, 421 A.2d 623, 627 (1980). Accord: *Commonwealth v. Ryan,* 300 Pa.Super. 156, 167, 446 A.2d 277, 283 (1982). Where the affiant relies on information from a confidential informant, " 'the magistrate must be informed of some of the underlying circumstances from which [the] informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed ... was credible or his information reliable.' " *Commonwealth v. White,* 311 Pa.Super. 146, 150, 457 A.2d 537, 539 (1983) quoting *Aguilar v. Texas,* 378 U.S. 108, 114–115, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964). Accord: *Commonwealth v. Davis,* 466 Pa. 102, 110, 351 A.2d 642, 646 (1976);

*Commonwealth v. Prosdocimo*, 308 Pa.Super. 187, 193, 454 A.2d 84, 87 (1982); *Commonwealth v. Turner*, 284 Pa.Super. 395, 398, 425 A.2d 1161, 1162 (1981). In determining the existence of probable cause, a magistrate is not required to find a prima facie showing of criminal activity but rather the *probability* of criminal activity. *Commonwealth v. Tolbert*, 492 Pa. 576, 580, 424 A.2d 1342, 1344 (1981); *Commonwealth v. Ryan, supra* 300 Pa.Super. at 166, 446 A.2d at 282; *Commonwealth v. Mazzochetti*, 299 Pa.Super. 447, 454, 445 A.2d 1214, 1217 (1982). While the inquiry is restricted to the four corners of the affidavit, *Commonwealth v. Stamps*, 493 Pa. 530, 536, 427 A.2d 141, 143 (1981), the affidavit is to be interpreted in a common-sense and realistic fashion. *Commonwealth v. Edwards*, 493 Pa. 281, 290, 426 A.2d 550, 554 (1981); *Commonwealth v. Ryan, supra* 300 Pa.Super. at 167, 446 A.2d at 283.

The requirements that the magistrate be informed of the basis of the informant's knowledge and also the basis for the affiant's belief that the informant was credible or his information reliable are not separate and discreet inquiries. "[A]n informant's 'veracity,' 'reliability' and 'basis of knowledge' are all highly relevant in determining the value of his report.... [H]owever, ... these elements should [not] be understood as entirely separate and independent requirements to be rigidly exacted in every case.... Rather, ... they should be understood simply as closely intertwined issues that may usefully illuminate the common-sense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Illinois v. Gates*, 462 U.S. 213, ——, 103 S.Ct. 2317, 2327, 76 L.Ed.2d 527, 543 (1983) (footnote omitted). Thus, the issue of an informant's credibility is *not* an independent inquiry unrelated to the issue of the source of the informant's knowledge. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a *fair probability*

that contraband ... will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Id.* 103 S.Ct. at 2332 quoting from *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960) (emphasis supplied).

The affidavit in the instant case provided the magistrate with the basis of informant # 1's knowledge, i.e. personal observation between January 23 and January 27, 1981, of a large quantity of marijuana in the place to be searched and a conversation with the accused between January 25 and 27, 1981. The information regarding the two vehicles used by appellant was corroborated by investigating officers. Informants # 2 and # 3, one of whom had provided reliable information in the past leading to the arrest of three individuals, informed the investigative officers of appellant's reputation as an active drug dealer, and Trooper Scales informed the affiant that he had negotiated a purchase of heroin from appellant two years earlier.

The four factors to be considered by a magistrate in determining the credibility of an unidentified informant and the reliability of his information were identified in *Commonwealth v. Ambers,* 225 Pa.Super. 381, 386, 310 A.2d 347, 350 (1973): "(1) Did the informant give prior reliable information? (2) Was the informant's story corroborated by another source? (3) Were the informant's statements a declaration against interest? (4) Does the defendant's reputation support the informant's tip?" Accord: *Commonwealth v. White, supra* 311 Pa.Super. at 151, 457 A.2d at 539; *Commonwealth v. Prosdocimo, supra* 308 Pa.Super. at 198, 454 A.2d at 89; *Commonwealth v. Mazzochetti, supra* 299 Pa.Super. at 455, 445 A.2d at 1218. It is not necessary, however, that the affidavit satisfy the magistrate of all four of these criteria. *Commonwealth v. White, supra* 311 Pa.Super. at 151, 457 A.2d at 539; *Commonwealth v. Prosdocimo, supra* 308 Pa.Super. at 198, 454 A.2d at 89; *Commonwealth v. Ambers, supra* 225 Pa.Super. at 386, 310 A.2d at 350. The affidavit in the instant

case provided evidence of the defendant's reputation in support of the tip; and that portion of the informant's narrative regarding the locations of the house and vehicles was corroborated by investigating officers. Under the "totality of the circumstances" test, it seems clear that the magistrate was warranted in finding a substantial basis for crediting the hearsay present in the affidavit and in concluding that there was a substantial probability that drugs were present in the house and vehicles described in the affidavit.

Appellant also contends that the Commonwealth failed to meet its burden of proof at the suppression hearing because it offered no evidence of probable cause other than the affidavit. This argument is not supported by the notes of testimony of the suppression hearing, is based upon a misconception of the law and was waived by appellant's failure to raise it at the suppression hearing or to include it in post-verdict motions. See: *Commonwealth v. Gravely*, 486 Pa. 194, 198–199, 404 A.2d 1296, 1298 (1979); *Commonwealth v. Gregory*, 309 Pa.Super. 529, 530, 455 A.2d 1210, 1210 (1983); *Commonwealth v. Seeley*, 297 Pa.Super. 498, 500, 444 A.2d 142, 143 (1982).

At a preliminary hearing the Commonwealth is required to establish "a prima facie case by showing probable cause to believe that a crime has been committed and that the defendant is the offender." *Commonwealth v. Gordon*, 254 Pa.Super. 267, 272, 385 A.2d 1013, 1015 (1978). Accord: *Commonwealth v. Prado*, 481 Pa. 485, 489, 393 A.2d 8, 10 (1978); *Commonwealth v. Mullen*, 460 Pa. 336, 341, 333 A.2d 755, 757 (1975); *Commonwealth v. Beatty*, 281 Pa.Super. 85, 91–92, 421 A.2d 1159, 1162 (1980); *Commonwealth v. Lodise*, 276 Pa.Super. 484, 489, 419 A.2d 561, 564 (1980). Moreover, " '[i]f in fact it is determined at trial that the evidence of the Commonwealth is sufficient to be submitted to the jury, then any deficiency in the presentation before the district justice would have been harmless....' " *Commonwealth v. Rineer*, 310 Pa.Super. 241, 244, 456 A.2d 591, 592 (1983) quoting *Commonwealth v.*

*Hess,* 489 Pa. 580, 590, 414 A.2d 1043, 1048 (1980). Cf. *Commonwealth v. Loar,* 264 Pa.Super. 398, 399 A.2d 1110 (1979) (plurality opinion). Trial counsel was not ineffective for failing to argue in post-verdict motions that the trial court erroneously denied a pre-trial petition for habeas corpus because it imposed an improper burden of proof on the Commonwealth. There would have been no merit in such a contention.

The judgment of sentence is affirmed.

BROSKY, J., files a concurring opinion.

BROSKY, Judge, concurring:

I concur in the result. In my view *Illinois v. Gates* should not be applied retroactively, and under the *Aguilar-Spinelli* standard which would then apply I would find the instant search warrant defective. However, since this Court has, in another case, spoken on the issue of *Gates'* retroactivity in the affirmative, I am constrained to follow precedent and concur in the result, rather than dissent.[1] Also, rather than merely adopting the *Gates* standard, I would have preferred a careful consideration as to whether this Commonwealth chooses—as is its right—to adhere to the stricter standard that has heretofore been the law. However, by applying the *Gates* standard to cases before it, this Court has made that standard the operative law of this Commonwealth. Even if that action was not based upon a recognition of the choice which was available to us, the current legal standard in this Commonwealth is, nonetheless, *Gates.* Accordingly, I am again obliged to concur rather than dissent.

### Retroactivity

The recent case of *Commonwealth v. Price,* 318 Pa.Super. 240, 464 A.2d 1320 (1983) held that *Gates* is to be applied retroactively.

1. Since the search warrant in question does, I conclude, meet the *Gates* standard, I concur in that portion of the majority opinion which also reaches that conclusion.

Appellee would contend, of course, that *Gates* was not the law at the time that the police sought the warrant from the magistrate and that, therefore, *Gates* is inapplicable and cannot now be applied retrospectively to validate a search warrant already found defective under the two-pronged test. This assertion of appellant [sic] overlooks the fact that an effect of the *Gates* decision was to enable the State of Illinois to proceed to trial against John Gates and to utilize in the presentation of the case of the prosecution the very evidence seized pursuant to the warrant of the magistrate but suppressed by the hearing judge.

*Id.*, 318 Pa.Superior Ct. at 247–248, 464 A.2d at 1325.

This analysis itself overlooks the principle of jurisprudence that a case can itself be applied retroactively without its new rule of law being applied retroactively to other cases. Indeed, if this were not so, all cases would have prospective effect only.

The question then is whether *Gates should* be applied retroactively. The guidelines to be used in making this type of decision have been laid down in the United States Supreme Court decision of *U.S. v. Johnson*, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982).

"Conversely where the Court has expressly declared a rule of criminal procedure to be 'a clear break with the past,' it almost invariably has gone on to find such a newly minted principle nonretroactive." *Id.* 457 U.S. at 549, 102 S.Ct. at 2587, 73 L.Ed.2d at 213. This Court has found that *Gates* "... abandon(ed) the *Aguilar-Spinelli* test ..." *Commonwealth v. Price,* supra, 318 Pa.Superior Ct. at 246, 464 A.2d at 1324. I agree with this characterization. In substituting a "totality of the circumstances" test for the "two prongs" of *Spinelli, Gates* has undeniably wrought an important change in the law.

A further consideration is the "effect on the administration of justice of a retroactive application of the new rule." *U.S. v. Johnson,* supra, 457 U.S. at 549, 102 S.Ct. at 2587, 73 L.Ed.2d at 214. Justice cannot be effectively adminis-

tered if *Gates* is retroactively applied. A defendant, through his counsel, could rely upon an evaluation of a search warrant defective under *Aguilar-Spinelli*. This reliance could lead him to forego certain options available to him, such as a plea bargain, on the well-founded conclusion that the fruits of the search would be suppressed at trial or on appeal. Then, while his appeal is pending, a change in the law could transmute the defective search warrant into a valid one. The law should not work in such a capricious manner.

In this Commonwealth, at least, *Gates* should not be applied retroactively.

## Application of Aguilar-Spinelli

The search warrant in question was unsupported by probable cause in relation to the first prong of *Aguilar-Spinelli:* underlying circumstances from which the issuing authority could conclude that the informant was reliable and credible. *Aguilar v. Texas,* 378 U.S. 108 at 114, 84 S.Ct. 1509 at 1514, 12 L.Ed.2d 723 at 728–29 (1964).

None of the four criteria used to evaluate the credibility or reliability of an informant were present. See *U.S. v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). Specifically, the informant's story was not corroborated by other sources, nor was there any properly supported information as to informant's reputation.[2]

## Option for Higher Standard

States have the option to accord the individual greater protection than is afforded by the interpretations of the United States Constitution of the U.S. Supreme Court or the applicable Circuit Court of Appeals.[3] This can be done on

---

2. Supporting these conclusions by reference to the record would be a fruitless exercise, since it is acknowledged that *Gates* is the current standard and the instant warrant meets that standard.

3. It is only the converse which is prohibited. That is, the states cannot restrict the individual's rights further than those interpretations allow.

52

the basis of our interpretation of the federal or of our state constitution. This Commonwealth's appellate courts have exercised this option in the past. I do not express an opinion as to whether this Commonwealth should choose to adhere to the *Aguilar-Spinelli* standard rather than adopting *Gates* for application in this state. I do, however, think that, whatever the final result, the people of this Commonwealth would have been better served by a consideration of this option.

I concur in part and concur in the result.