J-S75019-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MICHAEL JEROME PALMER | |
| Appellant | No. 3510 EDA 2015 |

Appeal from the Judgment of Sentence October 28, 2015
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0004205-2014

BEFORE:  BOWES, J., MOULTON, J., and MUSMANNO, J.

MEMORANDUM BY MOULTON, J.:  **FILED NOVEMBER 23, 2016**

Michael Jerome Palmer appeals from the October 28, 2015 judgment of sentence entered in the Court of Common Pleas of Lehigh County following his conviction for persons not to possess firearms.[1]  We affirm.

The trial court set forth the following facts:

> [A]t 5:00 P.M. on February 12, 2014, Detective Robert Flores of the Allentown Police Department Vice and Intelligence Division was conducting a prostitution sting. Detective Flores had responded to an ad placed on the internet site, Backpage.com, that led to the exchange of text messages with a female.  The female, later identified as Amanda Shore, made arrangements to meet Detective Flores at 6:00 P.M. at the Rodeway Inn located at 2115 Downeyflake Lane, Allentown, Lehigh County, Pennsylvania.  An agreement was reached between him and Ms. Shore regarding the exchange of one (1) hour of

_____

[1] 18 Pa.C.S. § 6105(a)(1).

sex for One Hundred seventy-five ($175.00) Dollars. Detective Flores proceeded to Room 215 at the Rodeway Inn as instructed. Ms. Shore observed Detective Flores through the peep hole and allowed his entrance into the motel room.[6]

> [6] Ms. Shore had provided Detective Flores with the room number across the hall from her motel room as a safety precaution. She wanted the opportunity to view him prior to allowing him to enter her motel room.

After Detective Flores placed the money on the table and Ms. Shore began to take off her shirt, three (3) other detectives and one (1) detective sergeant (Detective Sergeant Rocca) responded and knocked on the door.[7] The four (4) police officers entered the motel room to arrest the subject female. Detective Flores inquired of Ms. Shore if there was any contraband in the room and she replied in the negative. Thereafter, the officers searched the motel room for contraband and weapons. While doing so, three (3) bags by the bed closer to the window were located. Specifically, a red and blue duffel bag, a suitcase with women's clothing, and a toiletry bag with women's toiletries in it. Within the red and blue duffel bag, a black Champion drawstring bag which contained a loaded black Kel-Tec 9mm handgun with a magazine was located.[8] It was determined that this handgun had been stolen from Jacksonville, Florida in 2011.[9]

> [7] At this time, Detective Flores texted the other officers to come into the motel room.

> [8] All of the clothing within the red and blue duffel bag was men's clothing.

> [9] The female showed Detective Flores approximately ten (10) to fifteen (15) pictures on her cell phone of "Millz," and in one (1) picture he was wearing the same red shirt and red and black Chicago Bulls hat that were found in the duffel bag.

When Detective Flores inquired as to whom the bags belonged to, the woman denied ownership of same. She called a male known as "Millz," and asked him, via speaker phone, to come to the motel room. Shortly thereafter,

[Palmer] arrived at the Rodeway Inn in a black Jeep.[10] This black male, later identified as the Defendant Michael Palmer,[11] proceeded to knock on the door of the motel room. [Palmer] entered the room, and Detective Boyer patted him down for officer safety. Detective Boyer asked [Palmer] to furnish his name and date of birth so that a warrant check could be performed. Upon learning that there were no warrants outstanding, Detective Flores inquired of [Palmer] if the duffel bag in the motel room was his. [Palmer] indicated that, "Yes. The clothes belong to me," and asked if he could get them back. At this point, [Palmer] was handcuffed, placed into custody, and transported to the Headquarters of the Allentown Police Department.[12]

> [10] Ms. Shore had advised Detective Flores that Millz would be returning in a black Jeep.
>
> [11] Detective Flores immediately recognized [Palmer] as the same male depicted in Ms. Shore's pictures.
>
> [12] At Headquarters, [Palmer] denied that the handgun belonged to him.

Trial Court Opinion, 11/9/15, at 13-15 ("Op.") (internal citations omitted).[2]

After Palmer was taken to the police department, the police conducted a criminal background check and discovered that Palmer was prohibited from carrying a firearm because of a 2009 felony robbery conviction in Northampton County. *Id.*

On September 11, 2015, a jury convicted Palmer of persons not to possess firearms. On October 28, 2015, the trial court sentenced Palmer to 3½ to 7 years' imprisonment. On November 3, 2015, Palmer filed post-

_____

[2] In its subsequent Pennsylvania Rule of Appellate Procedure 1925(a) Opinion, the trial court incorporated its November 9, 2015 opinion in its entirety.

sentence motions, which the trial court denied. Palmer filed a timely notice of appeal.

Palmer raises the following issues on appeal:

> A. WHETHER OR NOT THE EVIDENCE AS PRESENTED WAS SUFFICIENT AS A MATTER OF LAW TO SUPPORT THE CONVICTION FOR PERSON NOT TO POSSESS A FIREARM WHEN THE EVIDENCE IDENTIFYING THE DEFENDANT AS THE POSSESSOR OF THE FIREARM WAS UNCLEAR, VAGUE, OR SPECULATIVE?
>
> B. WAS THE VERDICT AGAINST THE WEIGHT OF ALL THE EVIDENCE IN REGARDS TO THE PROOF OF WHETHER OR NOT THE DEFENDANT WAS PROPERLY IDENTIFIED AS THE POSSESSOR OF THE FIREARM?
>
> C. WAS THE DEFENDANT UNFAIRLY PREJUDICED WHEN THE PROSECUTOR, DURING CLOSING ARGUMENTS, MISSTATED THE EVIDENCE REGARDING THE OWNERSHIP OF THE BAG IN WHICH THE ILLEGAL FIREARM WAS FOUND OR IMPROPERLY ASKED THE JURY TO CONSIDER AS EVIDENCE TESTIMONY THAT HAD BEEN SPECIFICALLY LIMITED IN ITS USE?

Palmer's Br. at 8-9.

Palmer first challenges the sufficiency of the evidence. We apply the following standard when reviewing a sufficiency claim: "[W]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Lehman*, 820 A.2d 766, 772 (Pa.Super. 2003), *aff'd*, 870 A.2d 818 (Pa. 2005) (quoting *Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa.Super. 2001)). In applying this standard, "we may not weigh the evidence and substitute our judgment for the fact-finder." *Id.*

"[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Id.* Moreover, "[a]ny doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Id.* "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Id.* In applying the above test, we must evaluate the entire record and consider all evidence actually received. *DiStefano*, 782 A.2d at 582. Further, "the trier of fact[,] while passing upon the credibility of the evidence produced, is free to believe all, part or none of the evidence." *Id.*

A defendant is guilty of persons not to possess a firearm if he has been convicted of an enumerated offense and possesses, uses, controls, sells, transfers, or manufactures a firearm. 18 Pa.C.S. § 6105(a)(1).[3] Because the firearm was not found on Palmer's person, the Commonwealth had to prove constructive possession. *See Commonwealth v. Kirkland*, 831 A.2d 607, 610 (Pa.Super. 2003) (finding that when no narcotics were found on appellant's person, the Commonwealth had to prove constructive possession). "Constructive possession is established when a person, though lacking . . . physical custody, still has the power and intent to exercise

---

[3] Robbery is an offense enumerated in 18 Pa.C.S. § 6105(b).

control over the object." ***Henderson v. United States***, 135 S.Ct. 1780, 1784 (2015). The elements of constructive possession may be inferred from the totality of the circumstances and may be proven by circumstantial evidence. ***Commonwealth v. Gray***, 469 A.2d 169, 170-71 (Pa.Super. 1983), ***aff'd***, 503 A.2d 921 (Pa. 1985).

Palmer claims that the Commonwealth failed to present sufficient evidence that he constructively possessed the firearm. Palmer's Br. at 19. We disagree. As the trial court found, the Commonwealth presented sufficient evidence that Palmer constructively possessed the firearm. Op. at 15-16. Shore testified that before arriving at Rodeway Inn, she and Palmer had stayed at The Knights Inn for two to three days, N.T., 9/10/15, at 50-51, and that the duffel bag belonged to Palmer, ***id.*** at 58-60. She also testified that her arrangement with Palmer included his providing her protection in the event she needed it. ***Id.*** at 49-50, 87-88. At the scene, she showed the officers pictures of Palmer on her phone, including a picture of Palmer wearing the clothes that the police found in the duffel bag that also contained the drawstring bag with the firearm. ***Id.*** at 61-72; Op. at 6 n.4. On one of the pictures of Palmer, Shore had superimposed the word "Millz." N.T., 9/10/15, at 64-65. Shore was asked to call "Millz," which she did. ***Id.*** at 78. She further informed the officers that "Millz" would be arriving in a black Jeep. ***Id.*** at 81. Approximately 15 minutes later, Palmer arrived in a black Jeep. ***Id.*** at 135-36. When the police asked him if he

owned the duffel bag, he responded, "Yes." *Id.* at 136-37. Palmer did go on to say "[t]he clothes are mine," *id.* at 137, and he never specifically admitted that the drawstring bag or firearm belonged to him. Nevertheless, taken together, Palmer's admission that he owned the duffel bag in which the firearm was found, Shore's testimony to his ownership of that bag and to his offer of protection, and circumstantial evidence linking him to the bag (the bag contained male clothing and a hat embroidered with "Millz") were more than sufficient to allow the fact-finder to conclude that Palmer had the power and intent to exercise control over the firearm.

Next, Palmer claims that the verdict was against the weight of the evidence and, thus, that the trial court abused its discretion in upholding the verdict. Palmer's Br. at 21-22. A defendant must raise a claim challenging the weight of the evidence with the trial judge "in a motion for a new trial: (1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion." Pa.R.Crim.P. 607(A). A defendant waives a weight challenge if he fails to raise it before the trial court. *Commonwealth v. Sherwood*, 982 A.2d 483, 494 (Pa. 2009). Palmer waived his weight of the evidence claim

because he failed to raise it before sentencing, at sentencing, or in a post-sentence motion.[4]

Finally, Palmer challenges the trial court's denial of a mistrial based on prosecutorial misconduct. We apply the following standard when reviewing a claim of prosecutorial misconduct:

> Our standard of review for a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion. In considering this claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one. Not every inappropriate remark by a prosecutor constitutes reversible error. A prosecutor's

---

[4] Palmer also waived this claim by failing to include it in his Pennsylvania Rule of Appellate Procedure 1925(b) statement. *See* **Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998) ("Any issues not raised in a [Rule] 1925(b) statement will be deemed waived.").

Even had Palmer preserved this claim, it would fail. This court reviews a weight of the evidence claim for abuse of discretion. **Commonwealth v. Clay**, 64 A.3d 1049, 1055 (Pa. 2013). Palmer claims that the verdict was against the weight of the evidence because there was no proof that he ever possessed the firearm, no prints on the gun matched Palmer's prints, and the evidence "was so tenuous, vague and uncertain such that the verdict should shock the conscience of the Court." Palmer's Br. at 22, 23. However, as discussed above, the Commonwealth established Palmer's guilt for the crime beyond a reasonable doubt. The jury was free to credit the Commonwealth's evidence linking him to the crime. **See Commonwealth v. Page**, 59 A.3d 1118, 1130 (Pa.Super. 2013) (quoting **Commonwealth v. Price**, 616 A.2d 681, 685 (Pa.Super. 1992) (credibility determination "lies solely within the province of the factfinder"); **Commonwealth v. DeJesus**, 860 A.2d 102, 107 (Pa.Super. 2004) ("The weight of the evidence is exclusively for the finder of fact, which is free to believe all, part, or none of the evidence, and to assess the credibility of the witnesses."). Palmer's argument that we should overturn the jury's determination is unpersuasive.

> statements to a jury do not occur in a vacuum, and we must view them in context. Even if the prosecutor's arguments are improper, they generally will not form the basis for a new trial unless the comments unavoidably prejudiced the jury and prevented a true verdict.

***Commonwealth v. Bedford***, 50 A.3d 707, 715-16 (Pa.Super. 2012) (internal citations and quotations omitted). Further "a prosecutor has considerable latitude during closing arguments and his arguments are fair if they are supported by the evidence or use inferences that can reasonably be derived from the evidence." ***Commonwealth v. Caldwell***, 117 A.3d 763, 773 (Pa.Super. 2015) (quoting ***Commonwealth v. Judy***, 978 A.2d 1015, 1020 (Pa.Super. 2009)).

Palmer claims that the assistant district attorney ("ADA"), during his closing argument, improperly used Shore's statements to the officers. Palmer's Br. at 24. The following exchange occurred during closing argument:

> [ADA]: . . . Let's go through it. Amanda says she's sharing the room with [Palmer]. True. By their own admission, that's true. She says that the bag belongs to [Palmer] when she's questioned - -
>
> [DEFENSE COUNSEL]: Objection. That's a false statement of the evidence.
>
> . . .
>
> (The following discussion took place at sidebar:)
>
> . . .
>
> [DEFENSE COUNSEL]: He just said that she said the bag is his. This is a direct misstatement of her testimony. She couldn't identify the bag at all. She said it repeatedly. That's my objection.

THE COURT:  Your objection is overruled.

(Discussion at sidebar concluded.)

. . .

[ADA]:  She tells us the bag is [Palmer]'s, the bag that the gun is found in belongs to [Palmer].  Again, [Palmer] agrees that that is - -

[DEFENSE COUNSEL]:  Objection, Your Honor.  May we be heard?

THE COURT:  No, you may not.  The testimony will be the jury's determination and recollection is what is controlling here.  I believe that what [the ADA] is talking about is when they first spoke to Amanda Shore.  So if you want to be a little more clear about at what point she said that [Palmer]'s bag - - that that bag belonged to [Palmer].  For that reason, if there was an objection, I'll sustain that part of it.  Just to be clear on which portion of time, her testimony versus any other statement.

[ADA]:  The bag containing the male clothing, the only bag in the room containing male clothing - - this bag here so we're sure what we're talking about, . . . - - when she was asked about the bag containing male clothing found in the room, she said it belonged to the Defendant, Millz.  That part is true, too.

N.T., 9/11/15, at 24-27.

Palmer's brief appears to advance two distinct complaints about that part of the ADA's closing quoted above.  The first complaint is that the ADA misstated the evidence.  Palmer's Br. at 23-24.  In particular, Palmer contends that while Shore had told the detective only that the larger duffel bag belonged to Palmer, the ADA suggested that she had said the smaller drawstring bag, which held the firearm and which was in the larger bag, belonged to Palmer.  After the trial court partially sustained a defense objection on this point, the ADA clarified that the "bag" he was referring to

was the duffel bag with Palmer's clothes, not the drawstring bag with the firearm. N.T., 9/11/15, at 26-27. Moreover, the trial court promptly instructed the jury that, concerning trial testimony, "the jury's determination and recollection is what is controlling here." *Id.* at 26. "The jury is presumed to have followed the court's instructions." ***Commonwealth v. Chmiel***, 30 A.3d 1111, 1147 (Pa. 2011) (quoting ***Commonwealth v. Flor***, 998 A.2d 606, 632 (Pa. 2010)). Accordingly, this complaint does not merit reversal.

Palmer's second complaint is that the ADA's closing argument used Shore's statement to the detective for its truth, contrary to the trial court's ruling and contrary to the rules of evidence.[5] Palmer's Br. at 24. Based on

---

[5] During Detective Flores's direct examination, Palmer's counsel objected to the admission of Shore's statements to the Detective on the day of the arrest as inadmissible hearsay. After that objection was overruled on the ground that the statements were not offered for their truth, N.T., 9/10/15, at 114-15, counsel requested "a curative instruction so the jury understands the distinction." *Id.* at 115. The trial court administered the following limiting instruction:

> THE COURT: I will give the appropriate instruction during closing. But if you want something now, what the testimony is right now that is coming from this Detective about what was told to him by the witness you previously heard is what's called hearsay. Because it's an out-of-court statement made by someone who wasn't under oath at the time, it can't be offered by this officer for its truth. What you heard from her is direct testimony that you can evaluate its credibility based on its own.

*(Footnote Continued Next Page)*

the trial transcript, we agree that the Commonwealth did appear to use for its truth Shore's statement to the police that the duffel bag belonged to Palmer. **See id.** at 27 ("[W]hen she was asked about the bag containing male clothing found in the room, she said it belonged to the Defendant, Millz. That part is true, too.").[6] That out-of-court statement was not, and could not properly have been, admitted for its truth. **See supra** note 5.

Despite this prosecutorial error, reversal is not warranted. First, the reference to Shore's statement to the detective was merely cumulative of her trial testimony, during which she told the jury directly that the duffel bag belonged to Palmer. N.T., 9/10/15, at 58-60. Moreover, the detective testified that Palmer himself had admitted that the duffel bag belonged to him. Palmer's Br. at 16; N.T., 9/10/15, at 137. Second, the trial court twice issued appropriate instructions concerning the proper use of Shore's

_(Footnote Continued)_ _____

> When he tells you now what she told him, it will explain to you, ladies and gentlemen, why he next did what he did and the acts thereafter. That is how you are to receive this testimony. You may continue.

N.T., 9/10/15, at 115. Furthermore, at the end of trial, the trial court again instructed the jury on the purpose of Shore's statements to Detective Flores. **See infra** note 7.

[6] In context, this reference appears to be to "when [Shore was] questioned" at the scene. N.T., 9/11/15, at 24.; **see also id.** at 26 (trial court's observation that "I believe that what [the ADA] is talking about is when they first spoke to Amanda Shore"). In contrast, Shore's trial testimony that the bag belonged to Palmer was properly admitted and used for its truth.

statement to the detective, once during Detective Flores's testimony, **see supra** note 5, and again during the jury charge.[7] As noted above, "[t]he jury is presumed to have followed the court's instructions." **Chmiel**, 30 A.3d at 1147. The trial court did not abuse its discretion in denying Palmer's request for relief based on prosecutorial misconduct.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/23/2016

---

[7] During the jury charge, the trial court stated:

> The statements made by Amanda Shore to Detective Flores on the night of her arrest were admitted for the purpose of you knowing why the Detective then took further action. Those statements made in the night of Amanda Shore's arrest to Detective Flores were not admitted for the truth of the matter.

N.T., 9/11/15, at 51. Before the court gave this instruction, Palmer's counsel stated that he was satisfied with it. **Id.** at 41.